## UNITED STATES *v.* JUNG AH LUNG.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Submitted January 9, 1888. — Decided February 13, 1888.

A Chinese laborer, who resided in the United States on November 17th, 1880, continued to reside there till October 24th, 1883, when he left San Francisco for China, taking with him a certificate of identification issued to him by the collector of that port, in the form required by the 4th section of the act of May 6, 1882, c. 126, 22 Stat. 58, which was stolen from him in China, and remained outstanding and uncancelled. Returning from China to San Francisco by a vessel, he was not allowed by the collector to land, for want of the certificate, and was detained in custody in the port, by the master of the vessel, by direction of the customs authorities. On a writ of *habeas corpus*, issued by the District Court of the United States, it appeared that he corresponded, in all respects, with the description contained in the registration books of the custom-house of the person to whom the certificate was issued. He was discharged from custody, and the order of discharge was affirmed by the Circuit Court.

On appeal to this court, by the United States, *Held:*

(1) He was in custody under or by color of the authority of the United States, and the District Court had jurisdiction to issue the writ;

(2) The jurisdiction of the court was not affected by the fact that the collector had passed on the question of allowing the person to land, or by the fact that the treaty provides for diplomatic action in a case of hardship;

(3) The case of the petitioner was not to be adjudicated under the provisions of the act of July 5, 1884, c. 220, 23 Stat. 115, where they differed from those of the act of 1882.

(4) In view of the provisions of § 4 of the act of 1882, in regard to a Chinese laborer arriving by sea, as distinguished from those of § 12 of the same act in regard to one arriving by land, the District Court was authorized to receive the evidence it did, in regard to the identity of the petitioner, and, on the facts it found, to discharge him from custody.

THIS was a petition for a writ of *habeas corpus.* The court below ordered the discharge of the prisoner, from which judgment the United States appealed. The case is stated in the opinion of the court.

*Mr. Attorney General* for appellant.

*Mr. Thomas D. Riordan* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal by the United States from a judgment of the Circuit Court of the United States for the District of California, affirming the judgment of the District Court of that district, in a case of *habeas corpus*, which ordered the discharge from custody of the person in whose behalf the writ was sued out.

On the 28th of September, 1885, a petition was presented to the District Court, alleging that Jung Ah Lung, a subject of the Emperor of China, was unlawfully restrained of his liberty by the master of a steamship in the port of San Francisco, he having arrived in that vessel and not being allowed to land because it was contended that it was unlawful for him to do so under the provisions of the acts of Congress on that subject.

On the filing of the petition, a writ of *habeas corpus* was

issued by the District Court to the master of the vessel, commanding him to produce the body of Jung Ah Lung before the court. This was done, and the master made return that he held Jung Ah Lung in his custody "by direction of the customs authorities of the port of San Francisco, California, under the provisions of the Chinese Restriction Act."

On the 12th of October, 1885, by leave of the court, the United States Attorney for the district was allowed to file, on behalf of the United States, a special intervention and plea to the jurisdiction of the court. Two questions were raised by it: (1) that Jung Ah Lung was not so restrained of his liberty as to be entitled to the benefit of a writ of *habeas corpus ;* (2) that the collector of the port had passed judgment on the matters of law and fact involved, and the same were *res adjudicata.* To this intervention Jung Ah Lung demurred, and the demurrer was sustained. The opinion of the court is reported in 25 Fed. Rep. 141. It considered the question of jurisdiction, and held that (1) the case was a proper one for the issuing of a writ of *habeas corpus;* (2) the collector was not clothed with exclusive jurisdiction in the premises. It gave leave to the District Attorney to file an intervention to the merits, which he did, setting forth that Jung Ah Lung was lawfully refused permission to land in the United States, in compliance with the provisions of acts of Congress, because he failed to produce to the collector the certificate of identification provided for by those acts ; and that he was not entitled to land in the United States. The issue thus joined was tried by the court.

There is a bill of exceptions, which states that the counsel for Jung Ah Lung offered to prove that he was a Chinese laborer, residing in the United States on November 17, 1880, the date of the last treaty between the United States and the Emperor of China; that he resided in the United States continuously until October 24, 1883, when, being about to return to China, he received from the collector of San Francisco a certificate enabling him to reenter the United States, in conformity with the act of Congress of May 6, 1882, c. 126, 22 Stat. 58 ; that he departed for China, taking such certificate with him ; that he remained in China until he embarked for

San Francisco on August 25, 1885; that, prior thereto, and in
June, 1885, he was deprived of said certificate by its being
taken from him by robbery, by pirates, in China; that the
books in the registration office of the custom-house in San
Francisco showed that the certificate was issued to him; that
no one had presented it or entered upon it, and it was uncan-
celled; and that he conformed in every particular with the
description kept in such registration office of the person to
whom such certificate was issued. The District Attorney
objected to the introduction of this testimony, as incompetent,
on the ground that the statute provided that the certificate
should be the only evidence permissible to establish the right
of a Chinese laborer to reënter the United States, and that no
secondary evidence of the loss and contents of the certificate
could be received. The objection was overruled by the court,
the District Attorney excepted to the ruling, and the evidence
was received.

The District Court filed the following findings:

"Counsel for applicant proceeded to introduce testimony by
which it appeared to the satisfaction of this court, and this
court so finds: That Jung Ah Lung is a Chinese laborer, being
one of the proprietors of a laundry situated at No. 1391 Second
Avenue, New York City; that he was a resident of the United
States on the 17th day of November, A.D. 1880, the date of
the last treaty between the United States and the Empire of
China, and that he resided continuously in the United States
until on or about the 24th day of October, A.D. 1883, when
he led for China on the steamer Rio de Janeiro; that,
before sailing for China, he duly applied for and received from
the collector of customs for the district of San Francisco a
certificate of identification, stating his name, age, occupation,
last place of residence, physical marks and peculiarities, and
all facts necessary for his identification in conformity to the
act of Congress entitled 'An act to execute certain treaty
stipulations relating to Chinese,' approved May 6th, 1882;
that he departed on said steamer for China, having in his pos-
session, and taking away with him, the said certificate; that,
during the month of June, A.D. 1885, while on a voyage from

his native village to the city of Canton, China, the junk upon which he was a passenger was attacked by pirates in.waters notoriously infested with piratical craft, who deprived said Jung Ah Lung of said certificate entitling said applicant to reënter the United States; that no one has presented said certificate at this port, and said certificate is outstanding and remains uncancelled on the books of the custom-house for the district of San Francisco; that the applicant corresponds, in all respects, to the description, contained in the registration books of the custom-house, of the person to whom the said certificate was issued, and that no doubt can be entertained that the applicant is the person to whom the said certificate was issued and delivered; that it was not suggested by the District Attorney, nor contended by him, that the proof, if admissible, failed to establish, in the most satisfactory manner, the facts herein found by the court, and he claimed that the applicant should be remanded solely on the ground that the testimony offered by the applicant could not, under the provisions of the acts of Congress known as the restriction acts, be received in evidence. Whereupon, the court, being of opinion that the said proofs were admissible and fully established the facts as claimed by the applicant, ordered that he be discharged."

The District Attorney filed the following exceptions to the findings :

"1st. That the court had no authority or jurisdiction to issue a writ in this case, as the applicant was not restrained of his liberty within the true intent and meaning of the act of Congress known as the *habeas corpus* act.

"2d. That the court, on the return of said writ of *habeas corpus*, had no authority or jurisdiction to inquire into and decide upon the lawfulness of said alleged restraint, for the reason that the same had been decided to be lawful by the collector of the port of San Francisco, or his deputy.

"3d. For the reason hereinbefore set forth, the said testimony as to the issuance, loss, and contents of the certificate mentioned aforesaid, and the evidence of the fact that the applicant is the identical person to whom said certificate was issued, is inadmissible under the provisions of the said restric-

tion acts, and that the applicant, having failed to produce his certificate, is not now entitled to enter the United States."

On the 5th of November, 1885, the District Court entered a judgment discharging Jung Ah Lung from custody. The United States appealed to the Circuit Court from the judgment, and from the rulings objected to by the United States on the trial, and especially from the order sustaining the demurrer to the special intervention and plea to the jurisdiction, and from the rulings admitting other testimony than the certificate to establish the right of Jung Ah Lung to come into the United States. The Circuit Court affirmed the judgment, as before stated, and from its judgment this appeal is taken.

It is contended for the United States that there was no jurisdiction in the District Court to issue the writ in the first instance, because the party was not restrained of his liberty within the meaning of the *habeas corpus* statute. It is urged that the only restraint of the party was that he was not permitted to enter the United States. But we are of opinion that the case was a proper one for the issuing of the writ. The party was in custody. The return of the master was that he held him in custody by direction of the customs authorities of the port, under the provisions of the Chinese Restriction Act. That was an act of Congress. He was, therefore, in custody under or by color of the authority of the United States, within the meaning of § 753 of the Revised Statutes. He was so held in custody on board of a vessel within the city and county of San Francisco. The case was one falling within the provisions of chapter 13 of Title 13 of the Revised Statutes.

It is also urged, that, if the right to issue the writ existed, otherwise, under the general provisions of the Revised Statutes, that right was taken away by the Chinese Restriction Act, which regulated the entire subject matter, and was necessarily exclusive. The act of May 6, 1882, c. 126, 22 Stat. 58, entitled "An act to execute certain treaty stipulations relating to Chinese," as originally passed, and as amended by the act of July 5, 1884, c. 220, 23 Stat. 115, is set forth in the margin, the words in italics being introduced by the act of 1884, while

those in brackets were in the act of 1882, and were stricken out by the act of 1884.[1]

---

[1] AN ACT TO EXECUTE CERTAIN TREATY STIPULATIONS RELATING TO CHINESE, APPROVED MAY 6TH, 1882, AS AMENDED JULY 5TH, 1884.

Whereas in the opinion of the Government of the United States the coming of Chinese laborers to this country endangers the good order of certain localities within the territory thereof; Therefore:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.* That from and after the [expiration of ninety days next after the] passage of this act, and until the expiration of ten years next after the passage of this act, the coming of Chinese laborers to the United States be, and the same is hereby, suspended; and during such suspension it shall not be lawful for any Chinese laborer to come *from any foreign port or place*, or, having so come [after the expiration of said ninety days,] to remain within the United States.

SEC. 2. That the master of any vessel who shall knowingly bring within the United States on such vessel and land, *or attempt to land*, or permit to be landed, any Chinese laborer, from any foreign port or place, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than five hundred dollars for each and every such Chinese laborer so brought, and may [be also] *also be* imprisoned for a term not exceeding one year.

SEC. 3. That the two foregoing sections shall not apply to Chinese laborers who were in the United States on the seventeenth day of November, eighteen hundred and eighty, or who shall have come into the same before the expiration of ninety days next after the passage of *the act to which this act is amendatory, nor shall said sections apply to Chinese laborers,* [and] who shall produce to such master before going on board such vessel, and shall produce to the collector of the port in the United States at which such vessel shall arrive, the evidence hereinafter in this act required of his being one of the laborers in this section mentioned; nor shall the two foregoing sections apply to the case of any master whose vessel, being bound to a port not within the United States, shall come within the jurisdiction of the United States by reason of being in distress or in stress of weather, or touching at any port of the United States on its voyage to any foreign port or place: Provided, That all Chinese laborers brought on such vessel shall *not be permitted to land except in case of absolute necessity, and must* depart with the vessel on leaving port.

SEC. 4. That for the purpose of properly identifying Chinese laborers who were in the United States on the seventeenth day of November, eighteen hundred and eighty, or who shall have come into the same before the expiration of ninety days next after the passage of *the act to which* this act *is amendatory,* and in order to furnish them with the proper evidence of their right to go from and come to the United States, [of their free will and

We see nothing in these acts which in any manner affects the jurisdiction of the courts of the United States to issue a

accord,] as provided by the *said act and the* treaty between the United States and China dated November seventeenth, eighteen hundred and eighty, the collector of customs of the district from which any such Chinese laborer shall depart from the United States shall, in person or by deputy, go on board each vessel having on board any such Chinese laborer and cleared or about to sail from his district for a foreign port, and on such vessel make a list of all such Chinese laborers, which shall be entered in registry-books to be kept for that purpose, in which shall be stated the *individual, family, and tribal* name *in full, the* age, occupation, *when and where followed,* last place of residence, physical marks or peculiarities, and all facts necessary for the identification of each of such Chinese laborers, which books shall be safely kept in the custom-house; and every such Chinese laborer so departing from the United States shall be entitled to, and shall receive, free of any charge or cost upon application therefor, from the collector, or his deputy, *in the name of said collector, and attested by said collector's seal of office,* at the time such list is taken, a certificate, signed by the collector or his deputy and attested by his seal of office, in such form as the Secretary of the Treasury shall prescribe, which certificate shall contain a statement of the *individual, family, and tribal* name *in full,* age, occupation, *when and where followed,* [last place of residence, personal description and facts of identification] of the Chinese laborer to whom the certificate is issued, corresponding with the said list and registry in all particulars. In case any Chinese laborer, after having received such certificate, shall leave such vessel before her departure he shall deliver his certificate to the master of the vessel, and if such Chinese laborer shall fail to return to such vessel before her departure from port the certificate shall be delivered by the master to the collector of customs for cancellation. The certificate herein provided for shall entitle the Chinese laborer to whom the same is issued to return to and reënter the United States upon producing and delivering the same to the collector of customs of the district at which such Chinese laborer shall seek to reënter; *and said certificate shall be the only evidence permissible to establish his right of reëntry;* and upon [delivery] *delivering* of such certificate by such Chinese laborer to the collector of customs at the time of re-entry in the United States, said collector shall cause the same to be filed in the custom-house and duly cancelled.

SEC. 5. That any Chinese laborer mentioned in section four of this act being in the United States, and desiring to depart from the United States by land, shall have the right to demand and receive, free of charge or cost, a certificate of identification similar to that provided for in section four of this act to be issued to such Chinese laborers as may desire to leave the United States by water; and it is hereby made the duty of the collector of customs of the district next adjoining the foreign country to which said Chinese laborer desires to go to issue such certificate, free of charge or cost, upon application by such Chinese laborer, and to enter the same upon regis-

writ of *habeas corpus.* On the contrary, the implication of § 12 is strongly in favor of the view that the jurisdiction of

try-books to be kept by him for the purpose, as provided for in section four of this act.

SEC. 6. That in order to the faithful execution of [articles one and two of the treaty in] *the provisions of* this act [before mentioned,] every Chinese person, other than a laborer, who may be entitled by said treaty [and] *or* this act to come within the United States, and who shall be about to come to the United States, shall *obtain the permission of and* be identified as so entitled by the Chinese Government, *or of such other foreign government of which at the time such Chinese person shall be a subject,* in each case, [such identity] to be evidenced by a certificate issued [under the authority of said] *by such* government, which certificate shall be in the English language, [or (if not in the English language) accompanied by a translation into English, stating such right to come] *and shall show such permission, with the name of the permitted person in his or her proper signature,* and which certificate shall state the *individual, family, and tribal* name *in full,* title, or official rank, if any, the age, height, and all physical peculiarities, former and present occupation or profession, *when and where and how long pursued,* and place of residence [in China] of the person to whom the certificate is issued and that such person is entitled [conformably to the treaty in] *by* this act [mentioned] to come within the United States. *If the person so applying for a certificate shall be a merchant, said certificate shall, in addition to above requirements, state the nature, character, and estimated value of the business carried on by him prior to and at the time of his application as aforesaid: Provided, That nothing in this act nor in said treaty shall be construed as embracing within the meaning of the word "merchant," hucksters, peddlers, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation. If the certificate be sought for the purpose of travel for curiosity, it shall also state whether the applicant intends to pass through or travel within the United States, together with his financial standing in the country from which such certificate is desired. The certificate provided for in this act, and the identity of the person named therein shall, before such person goes on board any vessel to proceed to the United States, be viséd by the indorsement of the diplomatic representatives of the United States in the foreign country from which said certificate issues, or of the consular representative of the United States at the port or place from which the person named in the certificate is about to depart; and such diplomatic representative or consular representative whose indorsement is so required is hereby empowered, and it shall be his duty, before indorsing such certificate as aforesaid, to examine into the truth of the statements set forth in said certificate; and if he shall find upon examination that said or any of the statements therein contained are untrue it shall be his duty to refuse to indorse the same.* Such certificate, *viséd as aforesaid,* shall be primâ facie evidence of the fact set forth therein, and shall be produced to the collector of customs, [or his deputy,] of the port in the district in the United States at which the person named therein shall arrive, *and afterward*

the courts of the United States in the premises was not intended to be interfered with.    That section provides, that

*produced to the proper authorities of the United States whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate may be controverted and the facts therein stated disproved by the United States authorities.*

SEC. 7. That any person who shall knowingly and falsely alter or substitute any name for the name written in such certificate or forge any such certificate, or knowingly utter any forged or fraudulent certificate, or falsely personate any person named in any such certificate, shall be deemed guilty of a misdemeanor; and upon conviction thereof shall be fined in a sum not exceeding one thousand dollars, and imprisoned in a penitentiary for a term of not more than five years.

SEC. 8. That the master of any vessel arriving in the United States from any foreign port or place shall, at the same time he delivers a manifest of the cargo, and if there be no cargo, then at the time of making a report of the entry of the vessel pursuant to law, in addition to the other matter required to be reported, and before landing, or permitting to land, any Chinese passengers, deliver and report to the collector of customs of the district in which such vessels shall have arrived a separate list of all Chinese passengers taken on board his vessel at any foreign port or place, and all such passengers on board the vessel at that time. Such list shall show the names of such passengers (and if accredited officers of the Chinese *or of any other foreign* Government travelling on the business of that government, or their servants, with a note of such facts) and the names and other particulars, as shown by their respective certificates; and such list shall be sworn to by the master in the manner required by law in relation to the manifest of the cargo. Any [wilful] refusal or *wilful* neglect of any such master to comply with the provisions of this section shall incur the same penalties and forfeiture as are provided for a refusal or neglect to report and deliver a manifest of the cargo.

SEC. 9. That before any Chinese passengers are landed from any such vessel, the collector, or his deputy, shall proceed to examine such passengers, comparing the certificates with the list and with the passengers; and no passenger shall be allowed to land in the United States from such vessel in violation of law.

SEC. 10. That every vessel whose master shall knowingly violate any of the provisions of this act shall be deemed forfeited to the United States, and shall be liable to seizure and condemnation in any district of the United States into which such vessel may enter or in which she may be found.

SEC. 11. That any person who shall knowingly bring into, or cause to be brought into the United States by land, or who shall [knowingly] aid or abet the same, or aid or abet the landing in the United States from any vessel of any Chinese person not lawfully entitled to enter the United States,

"any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country

shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be fined in a sum not exceeding one thousand dollars, and imprisoned for a term not exceeding one year.

SEC. 12. That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, [by direction of the President of the United States,] and at the cost of the United States, after being brought before some justice, judge, or commissioner of a court of the United States, and found to be one not lawfully entitled to be or *to* remain in the United States; *and in all such cases the person who brought or aided in bringing such person to the United States shall be liable to the government of the United States for all necessary expenses incurred in such investigation and removal; and all peace officers of the several States and Territories of the United States are hereby invested with the same authority as a marshal or United States marshal in reference to carrying out the provisions of this act or the act of which this is amendatory, as a marshal or deputy marshal of the United States, and shall be entitled to like compensation to be audited and paid by the same officers. And the United States shall pay all costs and charges for the maintenance and return of any Chinese person having the certificate prescribed by law as entitling such Chinese person to come into the United States who may not have been permitted to land from any vessel by reason of any of the provisions of this act.*

SEC. 13. That this act shall not apply to diplomatic and other officers of the Chinese, *or other* Governments travelling upon the business of that government, whose credentials shall be taken as equivalent to the certificate in this act mentioned, and shall exempt them and their body and household servants from the provisions of this act as to other Chinese persons.

SEC. 14. That hereafter no state court or court of the United States shall admit Chinese to citizenship; and all laws in conflict with this act are hereby repealed.

SEC. 15. That *the provisions of this act shall apply to all subjects of China and Chinese, whether subjects of China or any other foreign power; and* the words "Chinese laborers," wherever used in this act, shall be construed to mean both skilled and unskilled laborers and Chinese employed in mining.

SEC. 16. *That any violation of any of the provisions of this act, or of the act of which this is amendatory, the punishment of which is not otherwise herein provided for, shall be deemed a misdemeanor, and shall be punishable by fine not exceeding one thousand dollars, or by imprisonment for not more than one year, or both such fine and imprisonment.*

SEC. 17. *That nothing contained in this act shall be construed to affect any prosecution or other proceeding, criminal or civil, begun under the act of which this [is] amendatory; but such prosecution or other proceeding, criminal or civil, shall proceed as if this act had not been passed.*

from whence he came . . . after being brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled to be or remain in the United States." So that, if it were to be claimed by the United States that Jung Ah Lung, if at any time he should be found here, was found unlawfully here, he could not be removed to the country from whence he came, unless he were brought before some justice, judge, or commissioner of a court of the United States and were judicially found to be a person not lawfully entitled to be or remain here. This being so, the question of his title to be here can certainly be adjudicated by the proper court of the United States, upon the question of his being allowed to land.

It is also urged, that the statute confides to the collector of the port of San Francisco the authority to pass upon the question of allowing Jung Ah Lung to land in the United States, and provides no means of reviewing his action in the premises; that only executive action in enforcing the treaty and the statutes is contemplated; and that there is no case in law or equity, growing out of the facts, to be inquired into by a judicial tribunal.

It is true that the 9th section of the act provides, that, before any Chinese passengers are landed from a vessel arriving in the United States from a foreign port, the collector of customs of the district in which the vessel arrives shall proceed to examine such passengers, comparing with the list and with the passengers the certificates issued under the act, and that no passenger shall be allowed to land in the United States from such vessel in violation of law. But we regard this as only a provision for specifying the executive officer who is to perform the duties prescribed, and that no inference can be drawn from that or any other language in the acts that any judicial cognizance which would otherwise exist is intended to be interfered with.

It is also urged, that the treaty itself contemplates only executive action, for the reason that the fourth article of the treaty 22 Stat. 827 provides that, if the legislation adopted by the United States to carry out the treaty shall be "found

to work hardship upon the subjects of China, the Chinese minister-at Washington may bring the matter to the notice of the Secretary of State of the United States, who will consider the subject with him." But there is nothing in this provision which excludes judicial cognizance, or which confines the remedy of a subject of China, in a given case of hardship, to diplomatic action.

The remaining question is as to the effect of the non-production of the certificate. It is contended for the United States, that the actual production by Jung Ah Lung of the certificate issued to him was essential to enable him to land; that the statute does not provide for secondary evidence of its contents; and that it is of no consequence that he corresponds in all respects to the description, contained in the registration books at the custom-house, of the person to whom the certificate was issued, for the reason that the statute does not say that such species of evidence can be resorted to.

Jung Ah Lung having departed from the United States on the 24th of October, 1883, and having then received the certificate of identification under the act of 1882, his case is to be governed by the provisions of that act, and not by the provisions of the act of 1884. The certificate he received contained the matters provided for by the act of 1882, and not those provided for by the act of 1884. The registry books of the custom-house contained, in regard to him, the particulars specified in the act of 1882, and not those specified in the act of 1884. The provisions of the act of 1884, in the respects in which they differ from those of the act of 1882, do not apply to him or to his certificate; and, if he had his certificate to present to the collector, he could not be required to present a certificate containing the additional particulars required by the amendments made by the act of 1884 to the 4th section of the act of 1882. The provisions of the act of 1884, so far as they relate to the contents of the certificate to be issued, and of the certificate to be presented to the collector by the returning Chinese laborer arriving by a vessel, are not retrospective. This principle was determined in the case of *Chew Heong* v. *United States*, 112 U. S. 536, where it was held, that a Chinese laborer,

who was residing in the United States at the date of the treaty of November 17, 1880, and who departed by sea before the passage of the act of 1882, and remained out of the United States until after the passage of the act of 1884, was not required to produce any certificate to the collector, because otherwise his previously vested right to return would be injuriously affected. The same principle applies to the present case, in respect to the right of Jung Ah Lung to return without having received a certificate containing the additional particulars required by the amendatory act of 1884.

In regard to the main question involved, § 4 of the act of 1882 provides that, for the purpose of properly identifying Chinese laborers who were in the United States on the 17th of November, 1880, and in order to furnish them with the proper evidence of their right to go from and come to the United States of their free will and accord, as provided by the treaty, the collector shall, on board of the departing vessel, make a list of the Chinese laborers who are about to sail, which shall be entered in registry books to be kept for the purpose, in which shall be stated the particulars specified by the section, and all facts necessary for the identification of each Chinese laborer, which books shall be safely kept in the custom-house; and that each Chinese laborer shall receive from the collector, at the time such list is taken, a certificate signed by the collector and attested by his seal of office, which shall contain a statement of the particulars before mentioned, and facts of identification of himself, corresponding with the said list and registry in all particulars. The section then says: "The certificate herein provided for shall entitle the Chinese laborer to whom the same is issued to return to and reënter the United States, upon producing and delivering the same to the collector of customs of the district at which such Chinese laborer shall seek to reënter." It does not say that such certificate shall be the only evidence permissible to establish the right of reentry. It merely says that it shall be given for the purpose of properly identifying the laborer, and shall be proper evidence of his right to go from and come to the United States, and shall entitle him to return to and reënter the United States,

upon producing and delivering it to the collector of the district at which he shall seek to reënter. It does not say that the Chinese laborer returning by a vessel shall not be permitted to enter the United States without producing the certificate. In this respect there is a marked difference between § 4 and § 12 of the same act, in regard to a Chinese person entering the United States by land. Section 12 provides, that no Chinese person shall be permitted to enter the United States by land without producing the certificate mentioned in § 4 of the act. This distinction of language is very marked, and we think that, in the absence of like language in § 4, in regard to a Chinese laborer arriving by a vessel, it was competent for the District Court to receive the evidence which it did, in the case of a certificate claimed to have been actually lost or stolen, and that its conclusion of law was justified by the facts which it found.

In regard to a suggestion made that a Chinese laborer who has lost his certificate, or from whom it has been stolen, may seek to reënter the United States, by a vessel, at some port other than that at which he received the certificate, and that there would be a practical difficulty in identifying him at such port, in the absence of the certificate, it is sufficient to say that this is not such a case ; and that there would be no difficulty in producing in evidence the record of the custom-house of the port of departure, or a copy of it, at any port of entry, so as to compare the particulars stated in it with the Chinese laborer, and thus establish his identity or want of identity.

*The judgment of the Circuit Court is affirmed.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE FIELD and MR. JUSTICE LAMAR, dissenting.

MR. JUSTICE FIELD, MR. JUSTICE LAMAR and myself are unable to concur in the interpretation placed by the court upon the act of May 6, 1882, passed by Congress in execution of the supplemental treaty with China, concluded on the 17th of November, 1880.

By that treaty the United States were at liberty, notwithstanding the stipulations of the original treaty, to enact laws

regulating, limiting, or suspending the coming of Chinese laborers to, or their residence in, the United States; such limitation or suspension to be reasonable in its character. It further provided that "Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their body and household servants, and Chinese laborers who are now [November 17, 1880] in the United States, shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

The first section of the act of May 6, 1882, 22 Stat. 58, c. 126, suspends the coming of Chinese laborers to the United States from and after the expiration of ninety days next after that date, and until the expiration of ten years next after the passage of the act; and makes it unlawful for *any* Chinese laborer to come, or having so come after the expiration of said ninety days, to remain in this country. The second section makes it an offence, punishable by fine and imprisonment, for any master of a vessel to knowingly bring *any* Chinese laborer within the United States on such vessel from any foreign port or place.

The third section exempts from the operation of the preceding sections only such Chinese laborers as were in this country on the 17th of November, 1880, or who shall have come into the same before the expiration of ninety days next after May 6, 1882, "*and* who *shall produce* to such master before going on board such vessel, *and shall produce* to the collector of the port in the United States, at which such vessel shall arrive *the evidence hereinafter in this act required of* his being one of the laborers in this section mentioned."

The fourth section provides for registry books, to be kept by the collector of customs, in which shall be entered a list of all Chinese laborers departing on any vessel from his district, in which shall be stated the name, age, occupation, last place of residence, physical marks or peculiarities, and all facts necessary for the identification of such laborers. Each Chinese laborer, so departing from the country, after the passage of

the act of 1882, was entitled to receive, free of charge, upon application therefor, at the time such list is taken, a certificate, showing the above facts, signed by the collector or his deputy, and attested by his seal of office, in such form as the Secretary of the Treasury shall prescribe. It is important to observe that this statute expressly declares that all this was to be done "*for the purpose of properly identifying Chinese laborers who were in the United States on the seventeenth day of November, eighteen hundred and eighty,* or who shall have come into the same before the expiration of ninety days next after the passage of this act, and in order to furnish them *with the proper evidence of their right to go from and come to the United States* of their free will and accord, as provided by the treaty between the United States and China, dated November seventeenth, eighteen hundred and eighty." Further: "The certificate herein provided for shall entitle the Chinese laborer, to whom the same is issued, to return to and reënter the United States *upon producing and delivering the same* to the collector of customs of the district at which such Chinese laborer shall seek to reenter, and upon delivery of such certificate by such Chinese laborer to the collector of customs at the time of reëntry in the United States, said collector shall cause the same to be filed in the custom-house and duly cancelled."

The fifth section made provision for a similar certificate to a Chinese laborer of the class mentioned in the fourth section, and who desired to depart from this country "by land," to be given by the collector of customs of the district next adjoining the foreign country to which such laborer desires to go.

The twelfth section provides that "no Chinese person *shall be permitted* to enter the United States by land, *without producing* to the proper officer of customs *the certificate in this act required* of Chinese persons seeking to land from a vessel," &c.

In view of these provisions we have been unable to reach any other conclusion than that Congress intended, by the act of 1882, to prohibit the return to this country of any Chinese laborer who was here on the 17th of November, 1880, and who thereafter left the United States, taking with him the certifi-

cate prescribed by that act, unless he produced such certificate at the time he sought to reënter. · It is not disputed that such was the intention of Congress with respect to Chinese persons seeking to enter the United States "by land." Indeed, dispute upon that point is precluded by the express prohibition, in the twelfth section, upon all Chinese persons being permitted to enter this country by land "without producing to the proper officer of customs the certificate in this act required." But is there any ground to suppose that Congress intended to prescribe a different or a more stringent rule in relation to Chinese laborers entering by land than that prescribed in relation to Chinese laborers entering at one of the ports of the country? If it be said that the registry books kept at the port of departure furnish ample evidence for the identification of Chinese laborers, seeking to enter the country at that port, we answer, (1) that Congress saw fit to exclude from the country all ·Chinese laborers of the class to which appellee belongs, unless they produced to the collector the certificate issued as evidence of their right to reënter the United States; (2) that the rule prescribed is, by the very terms of the statute, uniform in its application to all Chinese laborers and to every port of the United States. The Chinese laborer, who received a certificate under the act of 1882, was not bound to reënter the United States at the port from which he sailed and at which he received that certificate. He could, as we have seen, reënter by land or at any port of the United States, "upon producing and delivering" his certificate "to the collector of customs of the district at which such Chinese laborer shall seek to reenter." Now, suppose the petitioner, Jung Ah Lung, had sought to reënter the United States at the port of New York. How could he have been identified at that port as a Chinese laborer, to whom a certificate had been issued by the collector of customs at San Francisco? The collector of customs at New York would have been without authority to accept affidavits in support of his claim of a right to reënter. It is to be further observed that the act of July 5, 1884, 23 Stat. 115, c. 220, provides that section four of the act of 1882 shall be so amended as to read that "said certificate shall be the only

evidence permissible to establish his right of reëntry." This did not declare a new rule, but indicates, in language clearer than that previously used, the intention of Congress in passing the act of 1882.

If appellee's certificate was forcibly taken from him by a band of pirates, while he was absent, that is his misfortune. That fact ought not to defeat what was manifestly the intention of the legislative branch of the Government. Congress, in the act of 1882, said, in respect to a Chinese laborer, who was here when the treaty of 1880 was made, and who afterwards left the country, that "the proper evidence" of his right to go and come from the United States was the certificate he received from the collector of customs, at the time of his departure, and that he should be entitled to reënter "upon producing and delivering such certificate" to the collector of customs of the district at which he seeks to reënter; while this court decides that he may reënter the United States, without producing such certificate, and upon satisfactory evidence that he once had it, but was unable to produce it. As by the very terms of the act, a Chinese laborer, who was here on November 17, 1880, is not excepted from the provision absolutely suspending the coming of all that class to this country for a given number of years, unless he produces to the collector the certificate issued to him, we cannot assent to the judgment of the court.