# LAU OW BEW, Petitioner.

ORIGINAL.

No. 12. Original. Submitted November 2, 1891. — Decided November 16, 1891.

Only questions of gravity and importance should be certified to this court by the Circuit Courts of Appeals, under the provisions of the act of March 3, 1891, c. 517, § 6.

Whether the Chinese restriction acts, in the light of the treaties between the United States and China, apply to a Chinese merchant, domiciled in the United States, who temporarily leaves the country for purposes of business or pleasure, *animo revertendi*, is such a question of gravity and importance.

*Wan Shing* v. *United States*, 140 U. S. 424, explained.

THE case is stated in the opinion.

*Mr. J. Hubley Ashton* and *Mr. Thomas D. Riordan*, for the petitioner, submitted on their brief.

No one opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This is an application, upon notice, for a writ of *certiorari* requiring the United States Circuit Court of Appeals for the Ninth Circuit to certify to this court for its review and determination the case of Lau Ow Bew v. The United States, in which a final judgment was rendered by that court against the applicant on the 7th of October, 1891. The application is accompanied, in accordance with subdivision 3 of Rule 37, by a certified copy of the entire record of the case.

The petition states that the applicant is a person of the Chinese race and a natural-born subject of the Emperor of China, who is now, and for the past seventeen years has been, a resident of the United States and of no other country, having his domicil in the city of Portland and State of Oregon, where during all that time, he has been a merchant engaged in the

wholesale and importing business; that on the 30th of September, 1890, he left the United States on a temporary visit to his relatives in China, with the intention of returning as soon as possible; and that he did return on the steamship Oceanic, which arrived at San Francisco on the 11th of August, 1891.

That at the time of his departure he procured satisfactory evidence of his status in the United States as a merchant, under the regulations in that regard of the Treasury Department, adopted July 3, 1890, and on his return he presented his proofs to the collector of the port of San Francisco, who acknowledged their sufficiency and admitted that petitioner was entitled to the protection of the treaty between the United States and China, concluded July 28, 1868, 16 Stat. 739, and the supplemental treaty concluded November 17, 1880, 22 Stat. 826, and the act of Congress entitled "An act to execute certain treaty stipulations relating to Chinese," approved May 6, 1882, 22 Stat. 58, c. 126, as amended July 5, 1884, 23 Stat. 115, c. 220; but refused to permit petitioner to land, on the sole ground that he had failed and neglected to produce the certificate of the Chinese government mentioned in section six of the aforesaid act, as amended.

The petition further states that thereupon, on the 14th of August, 1891, petitioner filed a petition in the Circuit Court of the United States for the Northern District of California for a writ of *habeas corpus* to obtain his discharge from detention, alleging, among other things, that he was a merchant domiciled as aforesaid, and that it was claimed by the master of the steamship that he could not be allowed to land under the provisions of the sixth section of the act aforesaid as amended; and that the master of the steamship produced petitioner before the court on August 15, 1891, and made return to the writ that he held the petitioner in his custody "by direction of the customs authorities of the port of San Francisco, California, under the provisions of the Chinese restriction act."

An intervention was filed on behalf of the United States, alleging that petitioner was lawfully detained because he had

failed to produce to the collector of customs, or to any other authorized officer, the certificate of identification required by the act of 1882 as amended by the act of 1884. The return to the writ and the intervention were traversed by the petitioner.

The case was thereupon heard and determined upon the following agreed statement of facts: ·

"1st. That the said Lau Ow Bew is now on board the SS. Oceanic, which arrived in the port of San Francisco, State of California, on the 11th day of August, A.D. 1891, from Hong Kong, and is detained and confined thereon by Captain Smith, the master thereof.

"2d. That the said passenger is now and for seventeen years last past has been a resident of the United States and domiciled therein.

"3d. That during all of said time the said passenger has been engaged in the wholesale and importing mercantile business in the city of Portland, State of Oregon, under the firm name and style of Hop Chong & Co.

"4th. That said firm is worth $40,000, and said passenger has a one-fourth interest therein, in addition to other properties.

"5th. That said firm does a business annually of $100,000, and pays annually to the United States government large sums of money, amounting to many thousands of dollars as duties upon imports.

"6th. That on the 30th day of September, A.D. 1890, the said passenger departed from this country temporarily on a visit to his relatives in China, with the intention of returning as soon as possible to this country, and returned to this country by the steamship Oceanic on the 11th day of August, A.D. 1891.

"7th. That at the time of his departure he procured satisfactory evidence of his status in this country as a merchant, and on his return hereto he presented said proofs to the collector of the port of San Francisco, but said collector, while acknowledging the sufficiency of said proofs and admitting that the said passenger was a merchant domiciled herein, refused to permit the said passenger to land on the sole ground that the said passenger failed and neglected to produce the

certificate of the Chinese government mentioned in section 6· of the Chinese Restriction Act of May 6, 1882, as amended by the act of July 5, 1884."

On the 14th of September, 1891, the Circuit Court rendered judgment that the petitioner be remanded to custody. An opinion was filed by the learned District Judge holding the· Circuit Court, from which it appears that the judgment in the· case proceeded upon the ground of the controlling effect of the· decision of this court in *Wan Shing* v. *United States,* 140 U. S.. 424. From this judgment an appeal was prosecuted to the· Circuit Court of Appeals, which, on the 7th of October, 1891,. declined to certify any question of law in the case to this court for instruction, and affirmed the judgment of the Circuit Court.

By section five of the act of Congress, entitled, "An act to establish Circuit Courts of Appeals and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes," approved March 3, 1891, 26· Stat. 826, 828, c. 517, it is provided that appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts directly to this court in certain specified cases, including any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question ; and by section six, that the Circuit Courts of Appeals established by the act shall exercise appellate jurisdiction to review final decisions in the District and Circuit Courts in all other than the previously enumerated cases, unless otherwise provided by law, and that the judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy being aliens and citizens of the United States or citizens of different States ; as, also, in all cases arising under the patent laws, the revenue laws, and the criminal laws, and in admiralty cases ; and that the Circuit Courts of Appeals. may at any time certify to this court any questions or propositions of law concerning which such court desires instruction, for proper decision, whereupon this court may either give its. instruction on the questions and propositions certified or may

require the whole record and cause to be sent up for consideration, and thereupon decide the whole matter in controversy as if it had been brought here for review by writ of error or appeal. And it is further provided by that section that any case in which the judgment of the Circuit Court of Appeals is made final may be required by this court, by *certiorari* or otherwise, to be certified to it for review and determination, as if it had been brought here on appeal or writ of error.

It is evident that it is solely questions of gravity and importance that the Circuit Courts of Appeals should certify to us for instruction; and that it is only when such questions are involved that the power of this court to require a case in which the judgment and decree of the Court of Appeals is made final, to be certified, can be properly invoked. The inquiry upon this application, therefore, is whether the matter is of sufficient importance in itself, and sufficiently open to controversy, to make it the duty of this court to issue the writ applied for in order that the case may be reviewed and determined as if brought here on appeal or writ of error.

Assuming, for the purposes of the present motion, that the Court of Appeals had jurisdiction, it will be perceived from what has been stated that the disposition of the case involves the application of the Chinese restriction acts to Chinese merchants domiciled in the United States who temporarily leave the country for purposes of business or pleasure, *animo revertendi*, in the light of the treaties between the government of the United States and that of China.

By the treaty between the United States and China of 1868, all Chinese subjects were guaranteed the right, without conditions or restrictions, to come, remain in, and leave the United States, and to enjoy all the privileges, immunities and exemptions enjoyed by the citizens of the most favored nation. 16 Stat. 740, Art. vi. The treaty of November 17, 1880, put no limitation upon this right, so far as Chinese other than laborers were concerned. 22 Stat. 826. To what extent was any limitation intended by the acts of 1882 and 1884, drawn into consideration here, bearing in mind the general rule that repeals by implication are not favored? The sixth section of the act

of 1882, as amended by the act of 1884, 22 Stat. 58, 23 Stat. 115, provided that "every Chinese person, other than a laborer, who may be entitled by said treaty or this act to come within the United States, and who shall be about to come to the United States, shall obtain the permission of and be identified as so entitled," in the mode stated, and the certificate therein provided for is made the sole evidence, as to those to whom the section is applicable, to establish a right of entry into the United States. Manifestly, the question whether this section should be construed, taken with the treaties, to apply to Chinese merchants already domiciled in the United States, and to whom no intention of voluntarily surrendering that domicil can be imputed, is one of great gravity and importance.

The status of domicil in respect of natives of one country domiciled in another is a matter of international concern, and the acts of Congress are to be considered, in view of general and settled principles upon that subject, in arriving at a conclusion as to the operation upon the treaties with China, designed by Congress in those enactments. Was it intended that commercial domicil should be forfeited by temporary absence at the domicil of origin, and to subject resident merchants to loss of rights guaranteed by treaty if they failed to produce from the domicil of origin that evidence which residence in the domicil of choice may have rendered it difficult, if not impossible, to obtain? We refrain from particular examination of the point involved, and refer to it only so far as necessary to indicate its importance.

In the case of *Wan Shing* v. *United States*, 140 U. S. 424, Wan Shing came to this country at the age of sixteen, remained two years, and then returned to China, where he passed seven years. Upon his own evidence he appeared to be not a merchant but a laborer, and not to have gained a commercial domicil in this country; but if he had, his departure at the age of eighteen and his absence for seven years, without any apparent intention of returning, brought him, in our judgment, within the category of those required to produce the certificate of identification of the government of his origin or of which he was the subject. Upon that state of facts, the precise

inquiry arising on this petition did not present itself for defini-
tive disposition, and we do not feel justified under the circum-
stances in declining to afford the opportunity for its full
discussion, as now specifically pressed upon our attention.

While, therefore, this branch of our jurisdiction should be
exercised sparingly and with great caution, we are of opinion
that the grounds of this application are sufficient to call for
our interposition.

*Let the writ of certiorari issue as prayed.*