UNITED STATES ex rel. ROSEN v. WILLIAMS, Immigration Com'r.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 19.

1. HABEAS CORPUS (§ 30*)—DEPORTATION PROCEEDINGS—HEARING—IRREGU-LARITIES.

Irregularities in an order for the arrest of an alien in deportation proceedings do not affect the status of the alien held on a warrant of deportation after a fair trial, nor entitle him to relief on habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

2. ALIENS (§ 54*)—EXECUTION—GUILTY OF CRIMINAL OFFENSE—ADMISSIONS.

Under the Immigration Act (Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1911, p. 499]), providing for the exclusion of persons who have been convicted of, or admit having committed, a crime involving moral turpitude, evidence of the commission of such an offense may be furnished by admissions of the alien subsequent, as well as prior, to entry.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. HABEAS CORPUS (§ 23*)—EXCLUSION OF IMMIGRANT—ADMINISTRATION OF LAW—CONCLUSIONS OF IMMIGRATION OFFICERS—REVIEW.

While Congress has power to commit to executive officers the enforcement of the laws and regulations relating to the admission and exclusion of aliens, and declare that the conclusions of such officers in determining the right of an alien to enter shall be conclusive, a deportation order may be invalid, and the alien entitled to discharge on habeas corpus, if it is unsupported by any evidence, or is the result of errors of law.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Southern District of New York; E. H. Lacombe, Judge.

Habeas corpus by the United States, on the relation of Jeheil Rosen, an alien, to obtain relator's relief from the custody of the Commissioner of Immigration of the port of New York pursuant to a warrant of deportation containing a finding of the acting Secretary of Commerce and Labor that relator was a member of the excluded classes, in that he had admitted having committed bigamy prior to his entry into the United States. From an order dismissing the writ, relator appeals. Affirmed.

Henry A. Wise, of New York City (D. D. Walton, Jr., Asst. U. S. Atty., of New York City, of counsel), for appellee.

W. S. Bennet, of New York City, for appellant.

Before COXE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. In the very recent habeas corpus proceedings (Lou Wah Suey v. Backus, 225 U. S. 460, 468, 32 Sup. Ct. 734, 735 [56 L. Ed. 1165]) involving the sections of the Immigration Act of 1907 in question in the present case, the Supreme Court of the United States has said with respect to the effect of the decisions of executive officers in immigration cases:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final."

While the statutes under consideration by the Supreme Court in many of the cases in its long series of decisions have contained express provisions making the ruling of certain immigration officers final and conclusive unless reversed by higher officers and while the court has often referred to those provisions, we do not understand that they afford the real basis for the limitations placed upon the judicial review of such administrative decisions upon habeas corpus. The underlying principles are rather that Congress has power to commit to executive officers the enforcement of the laws and regulations relating to the admission, exclusion and deportation of aliens and that the conclusions of such officers are final unless a court or some other tribunal is expressly authorized to review them. In the absence of such authorization courts cannot review decisions of such officers further than to ascertain whether they have acted within their jurisdiction and have accorded the alien a fair hearing. These principles were stated by the Supreme Court in Nishimura Ekiu v. United States, 142 U. S. 651, 660, 12 Sup. Ct. 336, 338 (35 L. Ed. 1146), and have been approved many times since:

"An alien immigrant, prevented from landing by any such officer claiming authority to do so under an act of Congress, and thereby restrained of his liberty, is doubtless entitled to a writ of habeas corpus to ascertain whether

the restraint is lawful. Chew Heong v. United States, 112 U. S. 536 [5 Sup. Ct. 255, 28 L. Ed. 770]; United States v. Jung Ah Lung, 124 U. S. 621 [8 Sup. Ct. 663, 31 L. Ed. 591]; Wan Shing v. United States, 140 U. S. 424 [11 Sup. Ct. 729, 35 L. Ed. 503]; Lau Ow Bew, Petitioner, 141 U. S. 583 [12 Sup. Ct. 43, 35 L. Ed. 868]. And Congress may, if it sees fit, as in the statutes in question in United States v. Jung Ah Lung, just cited, authorize the courts to investigate and ascertain the facts on which the right to land depends. But, on the other hand, the final determination of those facts may be intrusted by Congress to executive officers; and in such a case, as in all others, in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine or controvert the sufficiency of the evidence on which he acted."

So in the recent case of Prentis v. Di Giacomo, 192 Fed. 467, 468, 112 C. C. A. 605, 606, the Circuit Court of Appeals for the Seventh Circuit, in a deportation case under the statutes here in question said:

"We believe the rule to be settled, however, under these congressional enactments, that their enforcement against aliens is vested exclusively in the designated executive department, for hearing, ascertainment of the facts, and rulings thereupon, 'without judicial intervention'; that Congress has so provided, within its powers, not only in respect of control over the alien at the time of landing for entry, but of like control during the probation period fixed by the act for ascertaining whether the entry was lawful, to direct and enforce deportation when the entry is found to be unlawful; and that the executive finding and order thereupon is not subject to judicial review or intervention, through the writ of habeas corpus or otherwise, except for failure or denial of the administrative hearing intended by the act."

See, also, Prentis v. Stathakos, 192 Fed. 469, 112 C. C. A. 607.

This conclusion that the courts in the absence of express statutory authority have a very limited power of review over the decisions of immigration officers, is entirely consistent with the decision of the Supreme Court of the United States in Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 171, 48 L. Ed. 317. In that case the court held that a citizen of Porto Rico was not an "alien" within the Immigration Act and released her upon habeas corpus. The express ground of the decision was that as the petitioner did not come within the act the immigration authorities had no jurisdiction to detain and deport her.

We have, therefore, in the present case to determine only two questions:

(1) Whether the immigration authorities acted within their jurisdiction;

(2) Whether the relator was given a fair hearing.

Manifestly the Secretary of Commerce and Labor had jurisdiction both of the person and subject-matter. The relator was an alien and subject to the immigration laws. The charge was that he had admitted the commission of the crime of bigamy. If he had admitted the commission of such crime concededly he came within one of the excluded classes. The question thus presented was for the Secretary to determine upon the evidence presented. He did determine it and, having jurisdiction both of the person and subject-matter, his decision was within his jurisdiction.

[1] The next question is whether the relator was given a fair hear-

ing. No question is made but that he was duly notified of the charge against him and had full opportunity to defend against it. Nor can there be any question but that there was some evidence in his own admissions tending to show that he had committed the crime of bigamy. The evidence was sufficient to negative a conclusion that the Secretary in acting upon it denied the petitioner a fair hearing or manifestly abused his discretion. Further than that we are not called upon to consider it.

The relator, however, insists that even if he admitted his guilt upon the hearing before the immigration officers, there was no proof whatever that he had admitted it before his entry into this country or before the issuance of the order of arrest. Assuming this to be so and that the Secretary acted altogether upon the admissions made by the relator upon the hearing, and further assuming that we have the right to go into the matter upon the theory that action without any evidence amounts to a denial of a fair hearing, still we think that the relator is not helped. It is true upon these assumptions that the allegations in the order of arrest that the relator had then admitted his guilt were unfounded. But irregularities in the order of arrest do not affect the status of an alien held upon a warrant of deportation after a fair hearing. It is even held that the fact that a warrant of deportation is based in part upon a charge not stated in the warrant of arrest is not an objection when the alien has had a fair hearing on the charge. Siniscalchi v. Thomas (C. C. A.) 195 Fed. 701, and cases cited.

[2] The contention of the relator, however, goes deeper than to the warrant of arrest. He contends that the Immigration Act in providing for the exclusion of "persons who have been convicted of or admit having committed * * * a crime * * * involving moral turpitude" speaks as of the time of the entry of such person into this country. And in support of his contention he calls attention to the fact that the rules of the department refer to aliens who "at the time of entry" belong to the excluded classes. While there is force in the argument made in behalf of the relator, we cannot regard it as well founded. The purpose of the act is to exclude aliens who have committed serious crimes in their own countries. Congress has not deemed it expedient to give immigration officers general power to determine questions of guilt or innocence and has limited them to excluding such criminals as have been convicted or admit their guilt. The admission is treated as evidence of guilt tantamount to conviction. But we see no reason why such evidence should be furnished by admissions made prior to rather than after the entry of the alien into this country and are not convinced that the language of the act requires us to so limit it.

The order of the District Court is affirmed.

COXE and WARD, Circuit Judges (concurring). We concur in the result and generally in the opinion of Judge NOYES.

[3] The opinion does not, however, make entirely clear our views upon a single point. We think that some evidence must be presented to justify a judgment of deportation and that conclusions of law must have some facts upon which to rest. The immigrant may, in a sense,

have a fair hearing although the conclusions drawn by the executive officers be wholly unsupported by proof. The findings of these officials are practically conclusive upon questions of fact, but we think they may commit errors of law which will justify a discharge upon habeas corpus.