## WAN SHING v. UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 1414. Submitted April 10, 1891. — Decided May 11, 1891.

The result of the legislation respecting the Chinese would seem to be this, that no laborers of that race shall hereafter be permitted to enter the United States, or even to return after having departed from the country, though they may have previously resided therein and have left with a view of returning; and that all other persons of that race, except those connected with the diplomatic service, must produce a certificate from the authorities of the Chinese government, or of such other foreign government as they may at the time be subjects of, showing that they are not laborers, and have the permission of that government to enter the United States, which certificate is to be viséd by a representative of the government of the United States.

THE case, as stated by the court, was as follows:

The petitioner, who is also appellant here, is a subject of the Emperor of China, and came from that country to the port of San Francisco, California, in the steamship Arabic, arriving there August 7, 1889. The officers of the customs refused to allow him to land in the United States, holding that he was a Chinese laborer and as such within the provisions of the exclusion act. The captain of the steamship therefore detained him on board, and he applied through a friend to the Circuit Court of the United States for the Northern District of California for a writ of *habeas corpus* to obtain his discharge from such detention; alleging that it was claimed by the master that he could not land under the provisions of the act of Congress of May 6, 1882, and the act amendatory thereof, whereas he was a resident of the United States on

the 17th of November, 1880, and departed therefrom prior to the 6th day of June, 1882, and that at all the times mentioned he was a merchant, doing business on Dupont Street, San Francisco, having only temporarily left the United States on April 19, 1882.

Upon the petition the writ was issued, the petitioner brought before the court and the matter referred to a commissioner to take testimony in the case and find the facts and his conclusions of law and report a judgment therein. Thereupon the petitioner was sworn before the commissioner; so also was the partner in business of his father. The commissioner made a report, transmitting to the court the testimony taken, finding that the petitioner had not established by sufficient evidence his right to reënter and remain in the United States, and recommending a judgment that he was not illegally restrained of his liberty and should be returned by the marshal to the custody of the master of the steamship. Subsequently the case was brought to a hearing before the Circuit Court upon this report and it held that the petitioner was not at the date of his petition illegally restrained of his liberty, but was a Chinese person forbidden by law to land within the United States or to remain therein. It was accordingly ordered that he be remanded by the marshal to the custody of the master of the steamship. From this judgment an appeal was taken to this court.

*Mr. J. J. Scrivener* for appellant.

*Mr. Assistant Attorney General Parker* for appellee.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The refusal of the officers of the customs at the port of San Francisco to allow the petitioner to land, and his consequent detention by the master of the steamship in which he was brought to this country, were not founded upon the act of May 6, 1882, and the act amendatory thereof, as erroneously

alleged in his petition. They were based upon the provisions of the act of October 1, 1888, which declared that from and after its passage it should be unlawful for any Chinese laborer, who at any time before had been or was then, or might thereafter be, a resident within the United States and who had departed or might depart therefrom, and should not have returned before its passage, to return to or remain in the United States. And it further declared that no certificates of identity, under which by the act of May 6, 1882, Chinese laborers departing from the country were allowed to return, should thereafter be issued, and it annulled every certificate of the kind which had been previously issued, and provided that no Chinese laborer should be permitted to enter the United States by virtue thereof.

The petitioner, if a laborer, could not therefore have been permitted to land except in violation of this statute, without reference to the question whether or not he was in the country on November 17, 1880, and had departed therefrom before the passage of the act of June 6, 1882.

His right to land, therefore, rested upon his establishing the fact that he was not a laborer, within the provisions of the act of October 1, 1888, and that could only have been shown by a certificate of identity issued under the authority of the Chinese government. The sixth section of the act of May 6, 1882, 22 Stat. 58, 60, c. 126, § 6, provides that, for the faithful execution of the treaty of November 17, 1880, every Chinese person, other than a laborer, who may be entitled by it and by that act to come within the United States, and who is about to come, " shall be identified as so entitled by the Chinese government in each case, such identity to be evidenced by a certificate issued under the authority of said government, which certificate shall be in the English language, or, (if not in the English language,) accompanied by a translation into English, stating such right to come, and which certificate shall state the name, title or official rank, if any, the age, height and all physical peculiarities, former and present occupation or profession, and place of residence in China of the person to whom the certificate is issued, and that such person is entitled

conformably to the treaty in this act mentioned to come within the United States. Such certificate shall be *prima facie* evidence of the fact set forth therein, and shall be produced to the collector of customs, or his deputy, of the port in the district in the United States at which the person named therein shall arrive." From this provision diplomatic and other officers of the Chinese government travelling upon the business of that government are exempted, their credentials being taken as equivalent to the certificate.

By the act of July 5, 1884, 23 Stat. 115, c. 220, this section six of the act of 1882 was amended and enlarged, so as to provide for the permission to be obtained from the Chinese government, or such other foreign government of which at the time the Chinese person shall be a subject; and declaring that the certificate provided for shall, before he goes on board any vessel to proceed to the United States, be viséd by the indorsement of the diplomatic or consular representative of the United States in the foreign country from which such certificate issues, whose duty it is made to examine into the truth of the statements therein before indorsing it, and if they are found to be untrue to refuse such indorsement. The section then declares that " such certificate, viséd as aforesaid, shall be *prima facie* evidence of the facts set forth therein, and shall be produced to the collector of customs of the port in the district in the United States, at which the person named therein shall arrive, and afterward produced to the proper authorities of the United States whenever lawfully demanded, *and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States;* but said certificate may be controverted and the facts therein stated disproved by the United States authorities."

This clause disposes of the case before us. No certificate was presented by the petitioner under the statute, showing that he was entitled to enter the United States, nor was any attempt made to account for its absence. The evidence offered to show that the petitioner was a merchant was weak and unsatisfactory, but the statute itself does away with the

..ecessity for any investigation by the court as to its sufficiency, for it declares that, while the certificate may be controverted by the authorities of the United States, and is to be taken by them only as *prima facie* evidence, it shall constitute the only evidence permissible on the part of the person producing the same to establish his right to enter the United States.

The result of the legislation respecting the Chinese would seem to be this, that no laborers of that race shall hereafter be permitted to enter the United States, or even to return after having departed from the country, though they may have previously resided therein and have left with a view of returning; and that all other persons of that race, except those connected with the diplomatic service, must produce a certificate from the authorities of the Chinese government, or of such other foreign government as they may at the time be subjects of, showing that they are not laborers, and have the permission of that government to enter the United States, which certificate is to be viséd by a representative of the government of the United States.

*Judgment affirmed.*