### UNITED STATES *v.* DON ON.

*Circuit Court, N. D. New York.* November 20, 1891.)

1. CHINESE LABORERS—TEMPORARY ABSENCE—RIGHT TO RETURN.

   A Chinese laborer was arrested for being in the United States in violation of the exclusion acts, as amended by Act Cong. Oct. 1, 1888. The evidence showed that he had been in this country continuously for 23 years prior to April 1, 1891, but that he was at Kingston, Canada, in the last week of that month. He denied having been there, and there was nothing to show his purpose in going, or his intention as to returning. *Held,* that he was unlawfully in the United States, and should be returned to Canada, as the country "whence he came." *Wan Shing* v. *U. S.,* 11 Sup. Ct. Rep. 729, 140 U. S. 424, applied; *In re Ah Tie,* 13 Fed. Rep. 291, distinguished.

2. SAME—HABEAS CORPUS—REVIEW—COMMISSIONER'S FINDINGS.

   On *habeas corpus* to release a Chinaman ordered by a United States commissioner to be returned to Canada, the commissioner's findings of fact cannot be reviewed.

Petition by Don On, a Chinese laborer, for a writ of *habeas corpus.* Petitioner and one Lee Sing were tried before Edward L. Strong, United States commissioner for the northern district of New York, for being unlawfully in the United States, and were by him ordered to be returned

to Canada. In rendering judgment the commissioner delivered the following opinion:

"The defendants were arrested under the 'Chinese Exclusion Acts,' May 2, 1891, at Clayton, N. Y. The evidence before me shows that Don On and Lee Sing are Chinese laborers, subjects of the Chinese empire, and that they both came to this country from China,—Don On about 22 years ago, and Lee Sing about 12 years ago; that they continuously resided here from that time to April, 1891. It further shows that on the 2d day of April, 1891, Lee Sing was in Toronto, Canada, and in the last week of April, 1891, Don On was in Kingston, Canada. The only question in this case is, did they depart from the United States so as to prevent them from coming back? Defendants' counsel claim that they did not lose the right to return to this country, unless they severed their connections here, and departed from the United States with the intent to make their residence elsewhere; that temporarily going to a foreign country, with no intentions of staying there, is not departing from the United States, in the meaning of the act of congress passed October 1, 1888. Sections 4, 5, c. 126, Laws 1882 of the United States, provide that the collector of the district shall issue to Chinese laborers departing from the United States a certificate, for the purpose of identification, and 'in order to furnish them with the proper evidence of their right to go from and come to the United States of their free will and accord.' Section 2, c. 1064, Laws 1888, repeals the above sections, and declares that no certificate shall be issued, and Chinese laborers, claiming admission by virtue thereof, shall not be permitted to enter the United States. It seems to me clear that the intent of congress was to give Chinamen who were here, prior to 1882, the right to temporarily depart and return to the United States, by procuring the necessary certificate, but that right was revoked by the law of 1888. I think that view of the law is clearly and fully expressed by Justice SAWYER in *Re Chae Chan Ping*, 36 Fed. Rep. 431. Justice FIELD says, in *Re Ah Sing*, 13 Fed. Rep. 289: 'The act even provides for the return of such laborers, leaving for a temporary period, upon their obtaining certificates of identification.' My attention has been called to the *Case of Ah Tie*, 13 Fed. Rep. 291. I have carefully read Justice FIELD's decision in that case, and particularly that part of his decision where he says: 'And we should hesitate to say that it would be lost by the laborer passing through a country in going to different parts of the United States by any of the direct routes, though we are told by counsel of the respondent that a Chinese laborer having taken a ticket by the Overland Railroad from this place to New York, by the Central Michigan route, which passed from Detroit to Niagara Falls, through Canada, was stopped at Niagara, and sent back, and, on his attempting to retrace his steps, was again stopped at Detroit. The construction which would justify such a proceeding cannot fail to bring odium upon the act, and invite effort for its repeal. The wisdom of its enactment would be better vindicated by a construction less repellant to our sense of justice and right.' This case hardly comes under those remarks. Here both defendants deny being in Canada, or, in fact, out of the United States, since they came here years ago. They both are positively identified as being in Canada in the month of April, 1891. How they got there, what they went for, or how long they expected to remain, or what their intentions were of returning, does not appear. From the evidence before me I find that the defendants, Don On and Lee Sing, are unlawfully within the United States, and that they are not lawfully entitled to be or remain in the United States. I therefore order that Don On and Lee Sing be returned to Canada, as the country from whence they came."

*Daniel Magone*, for petitioner.

*Frank C. Ferguson*, Asst. U. S. Atty., for the United States.

COXE, District Judge.   The commissioner has found that in the spring of 1891, the petitioner, a Chinese laborer, was at Toronto, Canada, and thereafter came to this country.   This finding cannot be reviewed upon this proceeding, and must be taken as an established fact.   I have re-examined the law in the light of these facts and am of the opinion that the case of *Wan Shing* v. *U. S.*, 140 U. S. 424, 11 Sup. Ct. Rep. 729, is controlling upon all questions presented upon the argument.   I have read the decision of Commissioner STRONG and concur with his conclusions.   The petitioner was in Canada and could not legally enter this country.   Application denied.

NOTE.   The marshal made return that he was unable to execute the judgment of the court for the reason that he had no money with which to pay the "head-tax" charged by the Canadian government.   Due notice of this fact having been given to the department of justice, and no funds having been provided, it was afterwards, on motion of the United States district attorney, ordered that the petitioner, Don On, be discharged from custody.