## GLYNN v. KRIPPNER et al.
### No. 9315.

Circuit Court of Appeals, Eighth Circuit.
July 19, 1932.

Thomas H. Quinn, of Faribault, Minn., for appellant.

Raymond A. Scallen, of Minneapolis, Minn., for appellees.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The parties will be designated in this opinion as they were in the District Court. The appellant was there the plaintiff; the appellees were the defendants. The plaintiff brought suit in the District Court against defendants to recover damages for personal injuries resulting from a collision at a highway intersection between a truck plaintiff was driving and an automobile driven by one of the defendants. The facts developed by the evidence, as set out in a condensed statement to which the parties have agreed, were as follows:

On March 19, 1930, the plaintiff was driving a truck in a northerly direction on state-aid road No. 23, which intersects state-aid road No. 30, which runs east and west. Both roads are in Rice county, Minn. The defendant Krippner was driving in a westerly direction on state-aid road No. 30, and at the intersection of the two highways the cars came into collision. This was about 3:30 o'clock in the afternoon. The plaintiff testified that he first looked to the right when he was 100 yards south of the intersection, and that at that time he saw no car; that he next looked when he was some 20 feet south of the intersection, and that he then saw the defendants' car about 100 or 125 feet to his right, approaching the intersection; that as

he (the plaintiff) was about to enter the south line of road (No. 39) at the intersection, he looked again and saw the defendants' car about 60 feet back from the intersection; that he (the plaintiff) could have stopped his car in 12 or 15 feet; that the defendants' car was coming at least 50 miles an hour and did not slacken speed; that the intersection was in the open country, and there were no other cars in sight at the time of the collision; that there was nothing which would seriously obstruct the view of either of the drivers. The plaintiff stated that he realized the speed of the defendants' car at the time he saw the car and before he himself had entered the intersection, but that he thought he could get across the road in time. He said that he was not relying upon the defendants' car slowing down.

At the trial, at the close of the plaintiff's case and the close of the whole case, defendants moved for a directed verdict on the theory that upon the evidence plaintiff was guilty of contributory negligence as a matter of law. These motions were denied. The case was submitted to the jury, which returned a verdict for the plaintiff awarding him damages in the amount of $1,600. Defendants then moved for judgment non obstante veredicto. That motion was sustained, the trial court, in passing on that motion, holding that the plaintiff upon the evidence was guilty of contributory negligence as a matter of law.

Two questions are presented on this appeal. The first is whether the District Court rightly ruled that the plaintiff as a matter of law was guilty of contributory negligence. The second is, assuming an affirmative answer to the first question, Did the District Court have jurisdiction to give judgment for the defendants notwithstanding the verdict?

█ 1. It is so well settled as to require no citations of authorities that, generally speaking, questions of negligence and contributory negligence are for decision by the jury. 45 Corpus Juris, 1299. "It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Grand Trunk Railway Company of Canada v. Ives, 144 U. S. 408, 417, 12 S. Ct. 679, 683, 36 L. Ed. 485. "The question of contributory negligence, like every question of negligence, is ordinarily for the jury; and it is only when there is no substantial conflict in the evidence which conditions it, and when, from the undisputed facts, all reasonable men, in the exercise of

a fair judgment, would be compelled to reach the same conclusion, that the court may lawfully withdraw it from them." Cary Bros. & Hannon v. Morrison (8 C. C. A.) 129 F. 177, 181, 65 L. R. A. 659; Interstate Power Company v. Thomas (8 C. C. A.) 51 F.(2d) 964, 970.

█ Whether the plaintiff was guilty of contributory negligence as a matter of law depends then on the answer to the question: Can any reasonable man conclude from the facts and circumstances in evidence that he used the care an ordinarily careful and prudent man would have used? That is the question which upon the record this court must answer now. That is the question which the District Court twice answered in the affirmative when it denied motions for directed verdict and finally in the negative when, upon fuller consideration, it sustained the motion for judgment notwithstanding the verdict.

In Interstate Power Company v. Thomas, supra, where the same question was involved, this court said that: "When a court assumes to say that reasonable men in exercising their fair and impartial judgment could not differ on a question of fact such as is here presented, it should be very sure of its ground. A layman's opinion on a question of fact may be fully as reasonable as a court's opinion." In the present case the issue of plaintiff's contributory negligence was submitted to the jury and by the jury resolved in plaintiff's favor.

Contributory negligence may be so clear from the evidence in a case that unquestionably all reasonable men would concur there was such negligence. For example, one who does not look and listen before he drives across a railway track and does not stop if otherwise he is not sure a train is not dangerously near, is certainly negligent. Baltimore & Ohio R. Co. v. Goodman, 275 U. S. 66, 70, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645. The cases are few, however, where negligence is that obvious. In the great majority of cases in which the question is presented reasonable men will differ as to which of two possible courses an ordinarily careful and prudent man would have taken under the circumstances present.

This case, we think, belongs to the majority. It is debatable whether an ordinarily careful and prudent man would have taken the course the plaintiff took. Being debatable, the question rightly was submitted to the jury.

The collision in which the plaintiff suffered injury was at the intersection of public

408

highways. When the plaintiff was 20 feet south of the intersection defendants were 125 feet east of the intersection. Defendants' car was then at least five times as far from the point the paths of the two cars crossed as was plaintiff's truck. For the plaintiff to proceed was but to do what the average man might well have done. As he was about to enter the intersection, he again looked and saw that the approaching car was 60 feet from the intersection. It was not slackening speed. Its rate of speed was not less than 50 miles an hour. His own speed (exactly what his speed was the record does not disclose) and other facts were such that he thought he could get across without collision.

When we reflect that, if the defendants' car was indeed traveling 50 miles an hour it was moving at the rate of 73 feet per second, and that, if plaintiff's car was traveling only half so rapidly, it was moving more than 36 feet per second and that therefore plaintiff's decision as to what to do, whether to go on or to apply the brakes and bring his truck to a sudden stop, perhaps in the very path of the on-coming automobile, must be made and then acted on in a second's time, we realize that this time element is a most important circumstance to be considered in determining whether there was ordinary care. It is an element all too likely to be overlooked when the situation is viewed in retrospect in the slower tempo of a trial or in the quiet of judicial chambers. He who would decide whether another has used ordinary care at a highway intersection should make that decision, not in his library, not by the aid of diagrams and models which he slowly moves by hand upon his diagrams, not in a place where a hundred feet seems no little distance, but in an automobile passing an intersection at 30, 40, or 50 miles an hour. He will then know that before one has time even to conceive the nature of an emergency suddenly arising both automobiles involved either will have collided or be far past the point where their paths intersect. He will hardly decide then that one course of action rather than another is so clearly indicated that reasonable minds could not differ.

■ No two cases of this character are identical in their facts. Where, as especially is true in cases of this character, the slightest difference in the facts determines whether one or another course is the more prudent, precedents are of little aid. We do not look into the books to determine whether one has used ordinary care in a given set of circumstances but to the circumstances and to the standards indicated by common experience and observation. Each case must be judged on its own facts. We have carefully considered, however, the cases relied on by the trial court and others cited by defendants. Our view is they are distinguishable in important facts from the present case.

In some of them it was held the plaintiff was guilty of contributory negligence as a matter of law, in that he failed to look along an intersecting highway where a clear view was open. In others it was held the plaintiff was guilty of contributory negligence as a matter of law, in that, although seeing an approaching automobile on the intersecting highway which had the right of way and which was approximately equidistant from the point of intersection he nevertheless sought to cross ahead of it.

■ Here the plaintiff did not fail to look. He did look. The District Court was of the view that "there can be no logical distinction between failing to look and failing to heed." But there is this distinction: "Looking" is a definite precaution which admits of no alternative consistent with due care. "Heeding," on the other hand, involves judgment and choice. On approaching an intersection, a driver should always look, but heeding what he sees involves a determination of what is best to do. No one would suggest that a driver on the highway must always stop and wait whenever he sees an approaching car. What he must do is determine whether the car is sufficiently near and coming at a sufficient rate of speed to require him to stop and wait. Because of the very fact that "heeding" an approaching car calls for the exercise of judgment and choice in an instant of time, whether a driver did or did not use ordinary care nearly always will be a jury question. Even the reasonably prudent man may make an error in judgment as to what course to take when a sudden emergency is present, whereas never will he fail to look on approaching an intersection.

■ It may be debatable as to whether in this case the plaintiff or the defendants had the right of way. The laws of Minnesota provide that, when two vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right; but the driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have. Section 18 (a), Uniform Highway Traffic Act, Minnesota Laws 1927, c. 412. In this case the.

plaintiff's automobile was on the left, but, when the plaintiff entered the intersection, the defendants' car was yet 60 feet east of the intersection. When the plaintiff's car was within 20 feet of the intersection, defendants' car was from 100 to 125 feet east of it. It may be concluded from these facts that, when the plaintiff's car was within 40 feet of the intersection, defendants' car was from 200 to 250 feet away. With these facts it would seem that the plaintiff had the right of way. It would seem, moreover, that, even if the defendants' car otherwise would have had the right of way, by the very terms of the statute, since the defendants' car was traveling 50 miles an hour and since that was found by the jury in this case to be a negligent rate of speed under all the circumstances, the defendants had forfeited the right of way. Certainly the defendants did not so indisputably have the right of way that plaintiff on that account was guilty of contributory negligence as a matter of law in attempting to cross the intersection ahead of the defendants' car.

If the plaintiff had the right of way, as we believe he did have, then it was the duty of the defendants to so slacken the speed of their car as to permit the plaintiff to cross, or, if necessary, to bring their car to a stop so that he could cross. He had a right to assume that the duty which the law imposed on the defendants would be complied with by them.

It is true that in this case the plaintiff testified "that he was not relying on the defendants' car slowing down." Apparently it was his view that he could cross in safety whether the approaching car did or did not slacken speed. Nevertheless, if the plaintiff had the right of way, it was the duty of the defendants, if necessary, to slacken speed or stop. The plaintiff may not have relied upon that, but he had a right to assume the defendants would stop or slacken speed until the opposite was clearly indicated. That he had the right of way certainly is a circumstance to be considered in judging whether he used ordinary care, and that whether he relied on it or not, whether he thought about it or did not think about it. Whether he was guilty of contributory negligence cannot be determined from a consideration of what thoughts were in his mind. It must be determined from objective facts and circumstances. The test is not what an ordinarily careful and prudent person would have done if he had had the same thoughts as plaintiff had, but what an ordinarily careful and pru-

dent person would have done under the same or similar circumstances. If it were otherwise, then we might easily have two cases with identical facts and circumstances, in one of which it would be ruled there was contributory negligence as a matter of law and in the other of which it would be ruled that there was not contributory negligence as a matter of law.

Summarizing this branch of the case, we thing it was error to rule that the plaintiff was guilty of negligence as a matter of law in attempting to pass the intersection which he was entering when the defendants' car was 60 feet away, when he had the right of way, when he had a right to assume that the defendants' car would slacken speed or stop, and when, after danger of collision was imminent, he had only a second's time to decide what course to take and to act on that decision.

2. That the trial court did not have jurisdiction to give judgment for the defendants non obstante veredicto is certain if the law is as the Supreme Court declared it in Slocum v. New York Life Insurance Company, 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. The learned trial judge in his opinion calls attention to the fact that that decision was by a divided court and that four of the Justices dissented. He says it is possible the Supreme Court of the United States as now constituted would not hold that the Constitution prohibits the granting of judgment notwithstanding the verdict, and he expresses "the hope that the Court of Appeals may see fit to certify the question of the right of a federal court to grant such judgment when the laws of the state permit that practice to the Supreme Court * * * for reconsideration."

The dissenting opinion in the Slocum Case seems to us, as it seemed to the trial judge, convincing. But it is a dissenting opinion. While laymen may think a decision of the Supreme Court which is not unanimous is less authoritative than one that is, courts cannot give countenance to that misconception. Only real "questions * * * of law concerning which instructions are desired for the proper decision of the cause" may be certified. U. S. C. title 28, § 346 (28 USCA § 346). When a question has been decided by the Supreme Court, it is, so far as the inferior federal courts are concerned, a question no longer.

As was said by the Court of Appeals for the Ninth Circuit in Lau Ow Bew v. United

States, 47 F. 641, 645: "We cannot put ourselves in the attitude of asking instructions upon a point already decided. If, as is contended on the part of the appellant, the case of Wan Shing v. U. S. [140 U. S. 424, 11 S. Ct. 729, 35 L. Ed. 503] was not fully presented to the court; and if, as is said, the treasury department of the government, in enforcing the provisions of the act of congress involved in Wan Shing's Case, is giving it a 'different construction from that given by the court whose province it is to construe and declare its meaning, under the belief that the court did not really intend to decide what it did decide; or if, for any cause, the supreme court may wish to reconsider the question,—an application to that tribunal to cause the record in the present case to be certified up to it may afford the appellant the remedy he seeks. For this court there is nothing to do but to affirm the judgment on the authority of the case cited, and it is ordered accordingly."

It is in vain that defendants seek to distinguish this from the Slocum Case. There is no distinction. The distinction suggested is that that case involved the power of an appellate court to order judgment notwithstanding the verdict, whereas this case involves the power of the trial court to so order judgment. But the Slocum decision is bottomed on the language of the Seventh Amendment that "no fact tried by a jury shall be otherwise re-examined in *any* Court of the United States, than according to the rules of the common law." In Engemoen v. Chicago, St. P., M. & O. Ry. Co. (8 C. C. A.) 210 F. 896, this court construed the Slocum decision, as limiting the power of the trial court. Moreover, if there could be any doubt as to the applicability here of the Slocum Case, it is removed by Pedersen v. Delaware, etc., R. R. Co., 229 U. S. 146, 153, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, where it was ruled, on the authority of the Slocum Case, that a federal trial court is without authority to give a non obstante judgment. It is to be noted also that to this ruling in the case last mentioned there was no dissent. The four Justices who had dissented in the Slocum Case considered the question as finally determined when, a year later, the Pedersen Case came up. If to them it was a question no longer, then this court will hardly say it is a question now.

The judgment is reversed, and the case remanded, with instructions to enter judgment in accordance with the verdict.