*In re* JUNG AH LUNG.[1] On *Habeas Corpus.*

*In re* JUNG AH HON. On *Habeas Corpus.*

(*District Court, D. California.* October 13, 1885.)

1. CHINESE RESTRICTION ACT—RIGHT OF CHINAMAN DETAINED ON BOARD VESSEL TO HABEAS CORPUS.

The refusal to allow a Chinese passenger to land is a restraint of his liberty, within the meaning of the *habeas corpus* act, and it is the duty of the court, justice, or judge to whom the application for a writ of *habeas corpus* is made to forthwith award the writ, unless it appears from the petition itself that the party is not entitled thereto. Rev. St. § 755.

2. SAME—DECISION OF COLLECTOR NOT RES ADJUDICATA.

The court, in investigating the legality of the detention of a Chinese passenger on board a vessel, in such case is not bound or controlled by the decision of the collector of the port, or his deputy, as to the right of such passenger to land.

In these cases the United States attorney proposed to raise for final submission to the supreme court, if necessary, two important points relative to the jurisdiction of the court in *habeas corpus* cases under the restriction act. After moving for and obtaining, by consent of the counsel for the petitioner, various formal orders necessary to enable him to raise and submit to the court the points proposed, he asked and obtained leave to file an amended intervention containing objections to the jurisdiction of the court. To this intervention and plea the counsel for the petitioners interposed a demurrer. As the proceeding was *quasi* amicable, and as the pleadings had been prepared with the knowledge of both parties, and after full conference by counsel on both sides with the judge, the reading of the pleadings was dispensed with and the cause submitted.

*Wm. F. Gibson*, for Jung Ah Lung.

[1] Affirmed. See 8 Sup. Ct. Rep. 663.

*S. G. Helborn,* U. S. Atty., for the United States.

HOFFMAN, J., (*orally.*)   The intervention filed by the district attorney challenges the jurisdiction of the court upon two grounds: *First,* that the petitioner is not restrained of his liberty within the meaning of the *habeas corpus* act; *second,* that the collector has already investigated and passed upon the petitioner's right to land; that the question is therefore *res adjudicata,* and that the court is bound by the collector's decision, and has no right to further examine into the matter.

1. It is admitted that the petitioner is of the Mongolian race; that he is on board a steamer recently arrived at this port, from which he is not permitted to land.   The mode of his restraint is not specified; but if restrained lawfully any force necessary to prevent his leaving the ship can rightfully be applied.   It is not denied that it is the intention of the master to retain him on board the ship until her departure, and then to convey him to the port in China from which he came, unless in the mean time the petitioner may find means of getting on board some other ship, without landing on our shores, to be conveyed by her to some foreign country.   Whether this proceeding be lawful may involve important questions of law and of fact.   The petitioner is a free man, under our flag, and within the protection of our laws.   If the denial, therefore, to the petitioner of the right to land, thus converting the ship into his prison-house, to be followed by his deportation across the sea to a foreign country, be not a restraint of his liberty within the meaning of the *habeas corpus* act, it is not easy to conceive any case that would fall within its provisions.

The second objection raised by the district attorney is that the restriction act commits to the collector the duty of deciding upon the right to land of any Chinese person arriving in this country; that his decision is final and conclusive, and that this court has no right to review it on the return of the writ of *habeas corpus.*

This claim of exclusive jurisdiction on the part of the collector must be derived from the provisions of the ninth section of the act of 1882; for no other section of the act affords the slightest color to such a pretension.   Section 9 is as follows:

"Before any Chinese passengers are landed from any such vessel the collector, or his deputy, shall proceed to examine such passengers, comparing the certificates with the list and with the passenger, and no person shall be allowed to land in the United States from such vessel in violation of law."

It will be perceived that the duty imposed upon the collector is to make the examination mentioned in the section.   He is not, in terms, directed to prevent the landing of passengers, but it may reasonably be inferred from the clause which forbids any passengers to be landed in violation of the law that it was intended that he should carry out that provision.   But the section affords no color to the extraordinary pretension that the result of that examination shall be final and conclusive upon the rights of passengers.   Such an abrogation of the

writ of *habeas corpus*, which has always been considered among English-speaking peoples the most sacred muniment of personal freedom, must be unmistakably declared by congress before any court could venture to withhold its benefits from any human being, no matter what his race or color.

It seems to have been in some quarters overlooked that the restriction act does not prohibit the coming into this country of all Chinese persons.

*First*. The restriction is, both by the treaty and the act of congress, confined to Chinese laborers; and persons other than Chinese laborers are not prohibited from landing. The passenger arriving here, therefore, may be a Chinese merchant, student, traveler from curiosity, or other person not a laborer. The inquiry into his *status* in this respect is often exceedingly difficult. *Second*. He may also hold a certificate issued by the custom-house authorizing him to re-enter the United States. The question whether such certificate has been fraudulently obtained, and whether the person holding it is entitled to its protection, is frequently raised, and often very difficult of solution. *Third*. He may also, under the decision of the supreme court, be entitled to land without a certificate if it shall appear that he resided in the United States at the date of the treaty and departed therefrom before the restriction act went into operation, and before it was possible for him to obtain a return certificate from the custom-house. This inquiry also is exceedingly difficult. *Fourth*. He may be entitled to land, on the ground that he was born in this country, and has therefore the full rights of an American citizen.

Here, also, difficult questions of fact may arise for determination. The collector who, it is suggested, is charged with the exclusive decision of these questions is not of necessity a lawyer. He discharges his duties by deputy. He is not authorized to administer oaths to witnesses, nor to compel their attendance. The discharge by him of the duties heretofore supposed to belong to the judicial department of the government would be almost impracticable, unless the other duties of his office be neglected. It is believed that in this class of cases the collector has rarely personally concerned himself with their examination. If I am right in the opinion that a Chinese person, like every other human being in this country, is entitled to the benefits of the writ of *habeas corpus* in order that it may be judicially ascertained whether the restraint of his liberty be lawful or unlawful, to require the court in its investigation to be governed by the decision of an executive officer, acting under instructions from the head of the department at Washington, would be an anomaly wholly without precedent, if not a flagrant absurdity.

The right to a writ of *habeas corpus* is the right to have the lawfulness of the restraint to which the petitioner is subjected inquired into by the courts; to be adjudged and determined by the law of the land. It has not as yet been committed to any purely executive officer. I

am, therefore, clearly of the opinion that it is the duty of the "court, justice, or judge to whom such application [for a writ of *habeas corpus*] is made, to forthwith award writ of *habeas corpus*, unless it appears from the petition itself that the party is not entitled thereto." Rev. St. § 755. The performance of this duty the court is not at liberty, on any pretext, to evade. That on the return of the writ it is the duty of the court to inquire and determine whether the restraint is lawful, independently of any previous decision of the question by the collector or his deputy, or by the surveyor, or by the inspector of customs stationed on board the vessel.

If the position taken in the intervention of the United States attorney be sound, an extraordinary circumstance must be noted. The restriction act has now been in operation for nearly three years and a half, and numerous cases on the return of the writs of *habeas corpus* issued on the application of Chinese persons have been presented to Mr. Justice FIELD, to Judge SAWYER, circuit judge, and the district judges of Washington Territory, Oregon, Nevada, and California. Similar cases have also arisen in the federal courts in Boston, New York, and Philadelphia, and on appeal have been decided by the supreme court of the United States.

It has never been suggested by any judge or district attorney that the refusal to allow a Chinese passenger to land was not a restraint of his liberty, the lawfulness of which was to be inquired into by the courts, nor has the still more extraordinary pretension until now been set up that in such inquiry the court, whether the supreme court of the United States, the circuit court, or the district court, was to be controlled by the decision rendered by the collector of the port or his deputy.

The demurrer to the intervention is sustained, and the district attorney is allowed to file an intervention contesting the merits of the application.