**Daniel MAGANA–PIZANO,**
**Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURAL-IZATION SERVICE, Respondent–Appellee.**

Nos. 97–15678, 97–70384.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1997.

Decided Sept. 1, 1998.

**1214**

Michael Franquinha, Stender & Larkin, Phoenix, Arizona, for petitioner-appellant.

Hugh G. Mullane, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent-appellee.

Lucas Guttentag (argued), Lee Gelernt, Laura L. Ho, Michael J. Wishnie (of counsel), San Francisco, California, for Amicus Curiae American Civil Liberties Union Foundation.

Lenni B. Benson, New York City, for Amici Curiae Law Professors.

Marc Van Der Hout and Zachary Nightingale, Van Der Hout & Brigagliano, San Francisco, California, Nadine Wettstein, Washington, DC, for Amicus Curiae The American Immigration Lawyers Association, and the National Immigration Project of the National Lawyers Guild.

Before: GOODWIN and THOMAS, Circuit Judges, PREGERSON,* District Judge.

PER CURIAM.

With enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress dramatically altered our immigration laws and judicial remedies for immigrants facing deportation or exclusion. To consider the proper jurisdiction for habeas corpus petitions and petitions for review of Board of Immigration Appeals decisions under the new statutes, we consolidated these actions. We dismiss the petition for review for lack of jurisdiction, but hold that the petitioner may pursue habeas corpus relief under 28 U.S.C. § 2241 in the United States District Court.

**I**

Daniel Magana–Pizano is a 25–year old native and citizen of Mexico who entered the United States on December 28, 1977, as the five-year old child of a lawful permanent resident. Magana–Pizano's parents and three of his siblings are lawful permanent residents of the United States; his fourth sibling is a United States citizen. Since his admission into the United States, Magana–Pizano has resided in Southern California and Arizona. He attended high school in the United States, and most recently worked as a fork lift operator.

His past includes a criminal history, albeit for mostly minor offenses. Relevant to this appeal, he was convicted in February 1995 in a California state court of being under the influence of cocaine and methamphetamine in violation of section 11550(a) of the California Health and Safety Code, a misdemeanor offense.

On May 17, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause [1] to Magana–Pizano alleg-

---

\* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. The Order to Show Cause alleged that Magana–Pizano was deportable under INA § 241(a)(2)(B)(i), codified at 8 U.S.C. § 1251 (1994) (redesignated by IIRIRA § 305(a)(2) as INA § 237(a)(2)(i), to be codified at 8 U.S.C.

§ 1227(a)(2)(B)(i) (Supp. II 1996)). This section provides that "[a]ny alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is deportable."

ing that he was deportable as a result of this misdemeanor criminal conviction. At his deportation hearing, Magana–Pizano conceded his deportability as a result of the drug conviction, but indicated that he would apply for a discretionary waiver of deportation under Section 212(c) of the Immigration and Nationality Act ("INA").

Unbeknownst to Magana–Pizano, Congress had already passed AEDPA, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (codified as amended in scattered sections of 8, 15, 18, 22, 28, 40, 42, 50 U.S.C.). Section 440(d) of AEDPA amended INA § 212(c) to eliminate discretionary relief for aliens convicted of most drug-related crimes, including Magana–Pizano's.[2] As a result of this statutory change, the INS filed a motion to pretermit Magana–Pizano's application for relief under INA § 212(c), arguing that section 440(d) of AEDPA and its amendment to section 212(c) were effective as of the date of passage on April 24, 1996. These changes provided that any alien who, like Magana–Pizano, was deportable due to a criminal conviction under 8 U.S.C. § 1251(a)(2)(B), was statutorily ineligible for discretionary relief.

The Immigration Judge granted the INS motion to pretermit Magana–Pizano's application and ordered Magana–Pizano deported to Mexico. Magana–Pizano appealed this decision to the Board of Immigration Appeals ("BIA"), which sustained the deportation order based on AEDPA changes to INA § 212(c), and the Attorney General's opinion in *Matter of Soriano*, Int. Dec. 3289 (A.G. Feb. 21, 1997). Magana–Pizano filed a timely petition for review of the BIA's decision with this Court.

Magana–Pizano also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Arizona. In his habeas petition, he argued that the BIA's decision and interpretation of AEDPA section 440(d) violated the Equal Protection Clause of the Constitution. The district court dismissed the complaint without prejudice for lack of jurisdiction, explaining that the statutory basis for habeas review for aliens in custody pursuant to an order of deportation was repealed by a different section of AEDPA. *See* AEDPA § 401(e), repealing 8 U.S.C. § 1105a(a)(10). Magana–Pizano filed a timely appeal of that decision to this Court. We sua sponte consolidated both matters.

## II

■ We first address Magana–Pizano's petition for review of the BIA decision holding that he was ineligible for discretionary relief under INA § 212(c). Magana–Pizano challenges the BIA's interpretation of AEDPA section 440(d) and its applicability to his case. We cannot reach the merits, however, because of new limitations that Congress has placed on our ability to hear such claims.

Prior to passage of IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656, the United States Court of Appeals was the proper tribunal for parties who wished judicial review of a BIA decision. *See* INA § 106(a), 8 U.S.C. § 1105a (1994) (repealed 1996). That now-repealed INA section provided that an alien could obtain judicial review by the appropriate court of appeals after entry of a final order of deportation.

Petitions for review filed between the passage of IIRIRA on September 30, 1996, and IIRIRA's general effective date of April 1, 1997, are governed by interim transitional

---

**2.** Section 440(d) of AEDPA modifies 8 U.S.C. § 1182(c) to provide that the Attorney General no longer has the authority to waive deportation of aliens convicted of certain crimes, such as those involving controlled substances. It provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than

paragraphs (3) and (9)(c)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion in him under section 1181(b) of this title. This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.

rules. *See* IIRIRA § 309(c); *Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997).[3] Because the BIA's decision holding Magana–Pizano statutorily ineligible for relief was issued March 17, 1997, IIRIRA's transitional provisions apply to his case. *See* IIRIRA § 309(c)(4); *Kalaw,* 133 F.3d at 1150.[4]

Section 309(c)(4)(G) provides:

there shall be no appeal permitted in the case of an alien who, is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

The INS concedes that this Court nonetheless retains a limited scope of judicial review for aliens who are deportable for criminal offenses enumerated in section 309(c)(4)(G) of IIRIRA—"[to] determine for itself whether the petitioner is (i) an alien (ii) deportable (iii) by reason of a criminal offense listed in the statute." *Yang v. INS,* 109 F.3d 1185, 1192 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). Magana–Pizano does not dispute that he is an alien deportable by reason of having committed one of the enumerated crimes. Rather, he argues that the Immigration Judge's and BIA's reading of AEDPA § 440(d) constitute an impermissible retroactive application of the amended statute.

Congress evidenced a specific intent for IIRIRA to apply retroactively to pending cases simply by virtue of its creation of tran-

sitional rules. *See* IIRIRA § 309(c). To this end, we note that this Court had jurisdiction to review certain final orders of deportation "only because Congress had conferred it." *Duldulao v. INS,* 90 F.3d 396, 399–400 (9th Cir.1996); *see also Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952) ("The power to expel aliens, being essentially a power of the political branches of government, the legislative and the executive, may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit.") (internal quotation marks and footnote omitted). Because Magana–Pizano's arguments are not within the narrow scope of this Court's review on direct appeal under IIRIRA's transitional rules, we dismiss his petition for review for lack of jurisdiction.

### III

### A

The district court denied Magana–Pizano's habeas corpus petition after concluding that the statutory basis for habeas review for aliens in custody pursuant to an order of deportation had been repealed by AEDPA. We agree that one avenue has been eliminated, but hold that the district court retains jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other judicial remedy. Thus, we reverse the judgment of the district court.

Prior to the passage of AEDPA and IIRIRA, aliens wishing to challenge the constitutionality of a final order of deportation via habeas corpus did so using one of two general methods: (1) proceeding pursuant to INA § 106(a)(10); or (2) proceeding pursuant to the general statutory habeas provision of 28 U.S.C. § 2241.[5] Prior to its repeal by AED-

---

**3.** The scope and validity of the permanent changes made by IIRIRA are not before us and we therefore decline to address those issues.

**4.** IIRIRA's jurisdictional changes are still subject to the judicial presumption against retroactive application of new legislation to pending cases. *See Hughes Aircraft Co. v. U.S. ex rel Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 1878, 138 L.Ed.2d 135 (1997) ("[t]he fact that courts often apply newly enacted jurisdiction-allocating statutes to pending cases merely evidences certain limited circumstances failing to meet the conditions for

our generally applicable presumption against retroactivity, not an exception to the rule itself."); *LaFontant v. INS,* 135 F.3d 158, 163 (D.C.Cir. 1998) ("the Supreme Court has clearly established the principle that in determining retroactivity, jurisdictional statutes are to evaluated in the same manner as any other statute.")

**5.** 28 U.S.C. § 2241 provides that writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. Among other things, it affords a remedy through

PA, INA § 106(a) provided the primary means of habeas review because its scope was broader than 28 U.S.C. § 2241.[6] Magana–Pizano filed his habeas petition pursuant to 28 U.S.C. § 2241.

We had previously expressly declined to decide the scope of habeas remaining after passage of AEDPA. *See Duldulao,* 90 F.3d at 400 n. 4. However, we recently decided that the remedy of habeas corpus was not available in immigration cases when a right of direct review existed. *See Hose v. INS,* 141 F.3d 932, 935 (9th Cir.1998). In *Hose,* the petitioner ignored her undisputed right to judicial review via a petition for review filed in this Court and instead filed a habeas petition under § 2241.

*Hose* considered the petitioner's claims in light of newly enacted INA § 242(g), which provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

INA § 242(g) (codified at 8 U.S.C. § 1252(g) (Supp. II 1996)).

In view of INA § 242(g), the court affirmed dismissal of the petition for lack of jurisdiction, stating:

> Except as provided in section 1252, federal courts are divested of all jurisdiction to hear any claim by any alien involving an immigration proceeding. This means that no federal court has jurisdiction to consider *any* such matter. Section 1252 gives this court jurisdiction to hear those claims

by way of a petition for review of a final order of removal. 8 U.S.C. § 1252(b). Section 1252 does not give the district court jurisdiction to hear Hose's habeas petition. Not having been granted jurisdiction under section 1252, that jurisdiction is removed just as the statute says it is.

*Hose,* 141 F.3d at 935 (emphasis in original).

The court further explained in considering Hose's habeas petition that:

> Under IIRIRA, Congress has not attempted to preclude all federal court review of orders to exclude or remove aliens. Rather it has provided a streamlined approach for consideration by the courts of appeals of claims arising from those orders and the procedures leading to them.

*Id.* at 936.

Thus, *Hose* was decided in the context of an appeal of a discretionary administrative decision for which alternative judicial remedies existed. Magana–Pizano's habeas corpus petition arises under polar opposite conditions: he has raised colorable constitutional issues concerning his proposed deportation, but has no judicial remedy save habeas relief because he is subject to the transitional rules of IIRIRA and the judicial review provisions found at new INA § 242(a) and (b) are not available to him. In short, if we apply INA § 242(g) as construed by *Hose*[7] to Magana–Pizano, he has no means of judicial review. Thus, Magana–Pizano's petition presents the question of whether INA § 242(g), as interpreted by *Hose* and applied to cases such as the one before us, violates the Suspension Clause of the United States Constitution by denying habeas relief in cases where no other avenue of judicial review exists.

---

a writ of habeas corpus to persons in custody in violation of the Constitution or laws or treaties of the United States.

**6.** Enactment of the INA § 106(a)(10) habeas remedy did not supplant the district court's general habeas corpus jurisdiction under 28 U.S.C. § 2241. Section 106 was enacted in 1961, after which we held that district courts had jurisdiction under *both* INA § 106(a)(10) and 28 U.S.C. § 2241 to review a final order of deportation, including the denial of discretionary relief pursuant to INA § 212(c). *Sotelo Mondragon v. Ilchert,* 653 F.2d 1254, 1255 (9th Cir.1980).

**7.** We employ the phrase "as construed by *Hose*" because other circuits have construed IIRIRA differently, *see Goncalves v. Reno,* 144 F.3d 110, 117 (1st Cir.1998); *Jean–Baptiste v. Reno,* 144 F.3d 212, 218–219 (2d Cir.1998), and the Supreme Court has not as yet resolved the intercircuit conflict. However, these considerations are irrelevant to our consideration because *Hose*'s construction is binding in this Circuit. *See Jeffries v. Wood,* 114 F.3d 1484, 1492 (9th Cir.1997) ("Only an en banc panel may overturn existing Ninth Circuit precedent.")

■ This was a question expressly reserved by *Hose*. In *Hose*, the court found no Suspension Clause violation because "Hose fail[ed] to establish how direct review of her claims by this court would be inadequate or ineffective." *Hose*, 141 F.3d at 936. However, the panel specifically noted that: "[w]e express no opinion on whether the statute violates the Suspension Clause as to aliens who then have *no* avenue of judicial review." *Id.* n. 3. (emphasis in original). *See Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (finding no unconstitutional suspension of the Great Writ when a substitute procedure is available "which is neither inadequate nor ineffective to test the legality of a person's detention.").

The Suspension Clause provides that: "The Privilege of the Writ of Habeas Corpus shall not be suspended unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art I, § 9, cl. 2. Although we assess the writ which the Constitution protects against suspension "as it exists today, rather than as it existed in 1789," *see Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), historical perspective is important.

As Chief Justice Burger noted, the "traditional Great Writ was largely a remedy against executive detention." *Swain*, 430 U.S. at 386, 97 S.Ct. 1224 (Burger, C.J., concurring). Indeed, challenges to executive detention are at the "historical core of the Suspension Clause." *Goncalves v. Reno*, 144 F.3d 110, 123 (1st Cir.1998). The "most celebrated writ in the English law," according to Blackstone, was employed to test "all manner of illegal confinement." 3 William Blackstone, Commentaries *129, *131. The writ was used in England to test the validity of noncriminal custody "since at least the early seventeenth century." Jonathan L. Hafetz, Note, The Untold Story of Noncriminal Habeas Corpus and the 1996 Immigration Acts, 107 Yale L.J. 2509, 2523 (1998). It eventually became a tool to challenge detention by the King. In *Darnel's Case*, 3 Howell's State Trials 1 (K.B.1627) (also known as *Case of Five Knights*), the writ was issued to test King Charles I's imprisonment of Sir Thomas Darnel and others for refusing to submit to the King's forced loan. Although the writ was ultimately denied, parliament responded

by forcing King Charles to affirm the Petition of Right which abolished the King's power to imprison by special command without showing cause. William F. Duker, A Constitutional History of Habeas Corpus 43–44 (1980). Thus, even in the Seventeenth Century, judicial scrutiny of executive detention existed long before the right was ever articulated in a governing instrument such as the Constitution.

The English tradition of challenging executive detention by habeas corpus continued into American immigration jurisprudence. Aside from the Alien and Sedition Acts passed in 1798, Congress did not enact legislation restricting immigration until Page Law of 1875, 18 Stat 477, which proscribed the entry of prostitutes and "oriental" laborers brought into the United States involuntarily. Shortly thereafter, in May, 1882, Congress passed the Chinese Exclusion Act, 22 Stat 58, which forbade the immigration of Chinese laborers for ten years. Numerous Chinese successfully challenged the application of the Exclusion Act through a habeas writ because they were citizens or residents of this country or otherwise outside of the Exclusion Act's jurisdictional reach. *See, e.g., In re Ah Sing*, 13 F. 286 (9th Cir.1882); *In re Ah Tie*, 13 F. 291 (9th Cir.1882); *In re Low Yam Chow*, 13 F. 605 (9th Cir.1882). The volume of habeas petitions was substantial: from 1882 to 1890, Judge Ogden Hoffman of the Northern District of California heard an estimated 7,000 Chinese habeas corpus petitions alone. David C. Frederick, Rugged Justice: The Ninth Circuit Court of Appeals and the American West, 1891–1941 59 (1994).

In 1885, the notion that the remedy of habeas corpus was not available because immigration was solely within the executive prerogative was soundly rejected in *In re Jung Ah Lung*, 25 F. 141, 142–43 (D.Cal. 1885), a decision affirmed by both the Ninth Circuit and the Supreme Court. *See United States v. Jung Ah Lung*, 124 U.S. 621, 8 S.Ct. 663, 31 L.Ed. 591 (1888). In that case, after noting that the writ "has always been considered among English-speaking peoples the most sacred muniment of personal freedom," the court observed:

The right to a writ of *habeas corpus* is the right to have the lawfulness of the re-

straint to which the petitioner is subjected inquired into by the courts; to be adjudged and determined by the law of the land. It has not as yet been committed to any purely executive officer. I am, therefore, clearly of the opinion that it is the duty of the "court justice or judge to whom such application (for a writ of *habeas corpus* ) is made, to forthwith award writ of *habeas corpus,* unless it appears from the petition itself that the party is not entitled thereto." Rev St. § 755. The performance of this duty the court is not at liberty, on any pretext, to evade. That on the return of the writ it is the duty of the court to inquire and determine whether the restraint is lawful, independently of any previous decision of the question by the collector or his deputy, or by the surveyor, or by the inspector of customs stationed on board the vessel.

*Id.* at 143–44 (italics and parenthetical reference in original). The Supreme Court affirmed, holding that the petitioner met the prerequisites for filing a writ, and that nothing in the Chinese Exclusion Act removed the writ. *Jung Ah Lung,* 124 U.S. at 626–32, 8 S.Ct. 663 ("We see nothing in these acts which in any manner affects the jurisdiction of the courts of the United States to issue a writ of habeas corpus.") A subsequent attempt to limit the jurisdictional implications of the decision was rejected in *United States v. Chung Shee,* 76 F. 951, 955–56 (9th Cir. 1896).

Subsequent to 1882, Congress passed a number of immigration laws which provided increased restrictions on judicial review, including the Immigration Act of 1891, 26 Stat. 1084, the Immigration Act of 1907, 34 Stat 898, and the Immigration Act of 1917, 39 Stat. 897. The Supreme Court sustained the restrictions on judicial review of discretionary decisions, in the process drawing for the

first time the distinction between aliens seeking admission to the United States and aliens already legally present and wishing to stay. *See, e.g., Ekiu v. United States,* 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146 (1892) (holding that Congress' plenary power to regulate immigration supplanted any procedural due process rights of arriving aliens subject to exclusion proceedings); *United States v. Ju Toy,* 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040 (1905) (assuming arguendo that an alien seeking admission has Fifth Amendment due process rights, those rights do not require a judicial trial as to the grounds for denial of entrance). However, throughout this period, the courts entertained challenges to executive immigration decisions through the remedy of habeas corpus. *See U.S. v. Chin Len,* 187 F. 544, 549 (2d Cir.1911) (an alien denied entry despite his valid claim of citizenship may properly challenge the fairness of his hearing by means of habeas corpus); *U.S. v. Tsuji,* 199 F. 750 (9th Cir.1912) (habeas corpus affords a remedy against the action of immigration officers, where they exceed their power or authority, although their decisions on questions of fact are final and not reviewable.).

In considering the Immigration Act of 1917, the Supreme Court wrote that the Act "clearly had the effect of precluding judicial intervention in deportation cases except insofar as it was required by the Constitution." *Heikkila v. Barber,* 345 U.S. 229, 234–35, 73 S.Ct. 603, 97 L.Ed. 972 (1953). After concluding an alien's rights were not enlarged by enactment of the Administrative Procedure Act, the court acknowledged the role of habeas corpus relief, noting that: "Now, as before, he may attack a deportation order only by habeas corpus." *Id.* at 235, 73 S.Ct. 603. Thus, even under legislation which intended to restrict all judicial review except as constitutionally required, the remedy of habeas corpus remained.[8]

---

8. Some courts have suggested that *Heikkila 's* habeas umbrella covers only narrow specific due process claims. This reading ignores cases decided subsequent to *Heikkila* in which Supreme Court reviewed both statutory and other constitutional claims. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (due process includes the right to have the decision-maker abide by applicable regulations); *United States ex rel. Hintopoulos v.*

*Shaughnessy,* 353 U.S. 72, 77–79, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957) (reviewing the Board of Immigration Appeals' discretionary denial of an application for suspension of deportation for an abuse of discretion). Moreover, the reference to due process in *Heikkila* related to the scope of review on habeas of an agency's factual determinations, not the entire range of permissible claims not presented by the facts of that case. *See Heikkila,* 345 U.S. at 236, 73 S.Ct. 603.

From 1953 to 1961, habeas corpus remained the primary remedy in immigration cases. With enactment of amendments to the INA in 1961, Congress established a base grant of judicial review through petitions for review of final deportation orders, and established a new specific habeas remedy in INA § 106(a)(10). Following passage of various interim measures, including the Immigration Reform and Control Act of 1986, Pub.L. No. 99–603, 100 Stat. 3359, AEDPA and IIRIRA present the next major development in the evolution of judicial review of immigration decisions, including the repeal of INA § 106.[9]

*Hose* interpreted IIRIRA as eliminating all forms of judicial review in immigration cases, including the remedy of habeas corpus. *Hose*, 141 F.3d at 935 ("No federal court has jurisdiction to consider any such matter."). Although we are mindful of our obligation to interpret the statute in a manner that renders it constitutionally valid, *see U.S. v. Henson*, 123 F.3d 1226, 1232 (9th Cir.1997), *Hose*'s statutory construction is binding upon us, even if we were inclined to interpret IIRIRA in a way that passes constitutional muster. *See United States v. X–Citement Video, Inc.*, 982 F.2d 1285, 1292 (9th Cir. 1992), *rev'd on other grounds*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

Thus, we must squarely face the issue of whether INA § 242(g) as construed by *Hose* and applied to the case at hand violates the Suspension Clause. Given the history of the writ, both in England and as applied in immigration cases in the United States, the answer must plainly be in the affirmative. Indeed, that conclusion is compelled by *Heikkila*. If in enacting IIRIRA Congress

intended to preclude judicial review in immigration cases "except insofar as it was required by the Constitution," *id.* at 234, 73 S.Ct. 603, then *Heikkila* provides the judicial response: "[n]ow, as before," a petitioner may attack a deportation order by habeas corpus. *Id.* at 235, 73 S.Ct. 603. Simply put, elimination of all judicial review of executive detention violates the Constitution.

**B**

Determining that Congress may not constitutionally repeal all forms of habeas relief in immigration cases without offending the Suspension Clause does not fully resolve the question at hand. The scope of habeas relief which the Constitution protects against suspension has been long debated. *See* Lenni B. Benson, Back to the Future: Congress Attacks the Right to Judicial Review of Immigration Proceedings, 29 Conn. L.Rev. 1411, 1474–78 (1997).

The Constitution itself "does not expressly provide a grant of jurisdiction to hear habeas petitions; rather, the Constitution preserves access to habeas corpus in the Suspension Clause." *Id.* at 1474. However, "[s]ince *Ex Parte Bollman*, it has generally been accepted that the intent of the habeas clause was somehow to guarantee a federal writ of habeas corpus." Duker, *supra* at 126. In *Bollman*, the presence of a constitutional imperative coupled with the absence of an expressly defined right was interpreted by Chief Justice Marshall as circumstance compelling congressional action. *See Ex parte Bollman*, 4 Cranch 75, 8 U.S. 75, 95, 2 L.Ed. 554 (1807) ("Acting under the immediate influence of

9. Despite the repeated mantra that Congress' power over immigration is plenary, an exception has been consistently recognized for those lawful aliens already present in the country and subject to deportation rather than exclusion. The Supreme Court explained that these aliens have procedural due process rights of a more traditional nature because "once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). *See also Ramirez–Durazo v. INS*, 794 F.2d 491, 496 (9th Cir.1986) ("An alien in deportation proceedings is entitled to certain procedural protections and substantive rights not available in an exclusion proceeding."). This

structure has been altered by IIRIRA; all proceedings have been consolidated into a single process now known as "removal" proceedings. *See* INA § 239(a), 8 U.S.C. § 1229(a) (Supp. 1998). This procedural restructuring does not by itself expand or contract the constitutional protections previously recognized in our immigration jurisprudence. *See Harman v. Forssenius*, 380 U.S. 528, 540, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965) ("Constitutional rights would be of little value if they could be ... indirectly denied."); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 829, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) ("The Constitution 'nullifies sophisticated as well as simple-minded modes' of infringing on Constitutional protections.").

this injunction, [Congress] must have felt, with peculiar force, the obligation of providing efficient means by which this great constitutional privilege should receive life and activity...."). Thus, Chief Justice Marshall implied a duty upon Congress to provide for the writ, noting that, "for if the means be not in existence, the privilege itself would be lost, although no law for its suspension should be enacted." *Id.; see also Stewart v. Martinez–Villareal,* —— U.S. ——, 118 S.Ct. 1618, 1622, 140 L.Ed.2d 849 (1998) ("It is axiomatic that 'the power to award the writ of habeas corpus by any of the courts of the United States, must be given by written law.'") (Scalia, J., dissenting).

If Congress had expressly chosen to repeal all statutory habeas, then we would be faced with the thorny problem of defining the contours of the "free standing" constitutional writ. *See Kolster v. INS,* 101 F.3d 785, 790 n. 1 (1st Cir.1996). Fortunately, we are not confronted with that circumstance. Neither AEDPA nor IIRIRA expressly refer to statutory habeas corpus relief pursuant to 28 U.S.C. § 2241. Thus, this is not an instance of express statutory repeal. *Moyle v. Director, OWCP,* 147 F.3d 1116, (9th Cir. 1998). The base habeas statute, 28 U.S.C. § 2241, which is the modern descendant of legislation passed by the First Congress of the United States, 1 U.S. Statutes at large 73, 81–82, remains. *Hose*'s construction of IIRIRA forfended access to relief under 28 U.S.C. § 2241 in immigration cases alone. Because the Suspension Clause forbids that application in this case, IIRIRA's impediment to the general habeas remedies of 28 U.S.C. § 2241 is removed for Magana–Pizano and those similarly situated. Thus, because Congress has chosen to implement the general right of habeas relief through 28 U.S.C. § 2241, we conclude that to the extent habeas remedies in immigration cases are protected by the Suspension Clause, relief is afforded through the statutory remedy of 28 U.S.C. § 2241.

This result is consistent with the historical treatment of habeas corpus in immigration cases. At the time when judicial review was congressionally limited "except insofar as it was required by the Constitution," *Heikkila,* 345 U.S. at 234, 73 S.Ct. 603, habeas relief was granted under the general habeas statute, not a common law writ. *See United States ex. rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

Our conclusion is also consistent with the requirement that judicial review of constitutional claims not be foreclosed. *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) ("serious constitutional question[s] ... would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."). The BIA lacks jurisdiction to adjudicate constitutional issues. *See Wang v. Reno,* 81 F.3d 808, 814 n. 7 (9th Cir.1996); *Bagues–Valles v. INS,* 779 F.2d 483, 484 (9th Cir. 1985). Accordingly, under *Hose*'s construction, INA § 242(g) would prevent Magana–Pizano from presenting his constitutional claims before any tribunal, administrative or judicial, far short of providing a procedure "which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain,* 430 U.S. at 381, 97 S.Ct. 1224.

Because section 2241 habeas relief is limited to persons in custody in violation of the Constitution or laws or treaties of the United States, it is, as we have noted, more narrow than habeas relief previously available under INA § 106. However, Magana–Pizano's petition clearly states a claim under 28 U.S.C. § 2241. He has made a colorable argument that his deportation would violate the Equal Protection and Due Process Clauses, and that his deportation is forbidden by United States statute. Thus, the gravamen of his action does not fall within the rubric of purely discretionary challenges, which some courts have held outside the scope of section 2241. *See, e.g., Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.1997).

The INS contends that if habeas corpus review remains under 28 U.S.C. § 2241, it must be limited to situations in which there is a threat of a "fundamental miscarriage of justice." No such limitation appears in 28 U.S.C. § 2241, and we decline to assume a legislative role and insert additional statutory language. Section 2241 has a long and storied history, and its standards are well-developed and known. The "fundamental miscarriage of justice" requirements have been imposed judicially only in cases of successive petitions where the abuse of the writ

doctrine would otherwise bar a subsequent petition. *See, e.g., Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) and *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Neither Congress nor the courts have imposed a "fundamental miscarriage of justice" requirement in a first habeas petition, and there is no statutory or judicial basis for doing so here. Thus, if a first-time habeas corpus petitioner is "in custody in violation of the Constitution or laws or treaties of the United States," the petitioner is entitled to habeas corpus relief. 28 U.S.C. § 2241(c)(3).

Accordingly, because the Suspension Clause prevents IIRIRA from foreclosing access to general statutory habeas relief in this case, Magana–Pizano may pursue his remedies under 28 U.S.C. § 2241.

### IV

■ The INS argues that to the extent the federal courts have any jurisdiction over Magana–Pizano's habeas petition, such jurisdiction lies with the Court of Appeals. However, the plain language of 28 U.S.C. § 2241 provides an unambiguous grant of jurisdiction to the district courts, stating, "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a) (1994). We are aware of the general concerns surrounding a bifurcated system of review. However, bifurcated review of immigration matters has been the norm, not the exception. *Compare Foti v. INS,* 375 U.S. 217, 221, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) (Court of Appeals review of discretionary relief) and *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (Court of Appeals review of motion to reopen), *with Cheng Fan Kwok v. INS,* 392 U.S. 206, 216, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968) (district court review of denial of stay of deportation). Moreover, it is appropriate that any evidentiary hearings with respect to habeas matters take place at the district court level which is uniquely positioned to handle such issues and develop the appropriate record. *American–Arab Anti–Discrimination Committee v. Reno,* 119 F.3d 1367, 1373 (9th Cir.1997), *cert. granted,* —— U.S. ——, 118 S.Ct. 2059, 141 L.Ed.2d 137 (1998). Maga-

na–Pizano's petition raises factual questions which are best committed to the wisdom of the district court for resolution.

Regardless of these policy considerations, in the end the choice of jurisdictional assignment is a Congressional one, and Congress vested the district courts with the power to review habeas corpus petitions. It is not only a proper choice, but one which we lack the power to judicially divest.

### V

In summary, we deny Magana–Pizano's petition for review for lack of jurisdiction. We reverse the district court's dismissal of Magana–Pizano's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 for lack of jurisdiction, and remand the case to the district court with instructions to proceed to the merits of the petition. We award Magana–Pizano his costs on appeal, but the question of attorney fees is reserved until the district court decides the merits of the petition.

PETITION FOR REVIEW DISMISSED; JUDGMENT REVERSED AND REMANDED.